**GRANDISON, Walter, Appellant,**

v.

**CUYLER, Julius T., Capt. Howard, Mr. Levengood, Mr. Buzzard C.O.I., Mr. Ettinger, Officer Salvey C.O.I., Sgt. Horwitz, Unknown at This Time.**

No. 84–1689.

United States Court of Appeals, Third Circuit.

Argued Aug. 13, 1985.

Decided Oct. 10, 1985.

Geoffrey Johnson (argued), Richard A. Sprague, Adam Shapiro, Stephen V. Yarnell, Sprague, Thall & Albert, Philadelphia, Pa., for Walter Grandison.

LeRoy S. Zimmerman, Atty. Gen., Mary E. Butler, Deputy Atty. Gen., Andrew S. Gordon, Senior Deputy Atty. Gen., Allen C. Warshaw, Senior Deputy Atty. Gen., David M. Donaldson (argued), Deputy Atty. Gen., Office of the Atty. Gen., Philadelphia, Pa., for appellees.

Before ADAMS, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

Walter Grandison, an inmate in the Pennsylvania State Correctional Institution at Graterford, appeals from the district court's entry of summary judgment in favor of the defendants, several prison officials, in an action brought pursuant to 42 U.S.C. § 1983 (1982) for money damages and injunctive relief. He contends that he was confined to solitary confinement without due process of law. The gravamen of his complaint is that the actions of the defendant officials deprived him of the opportunity to prepare for and the opportunity to present the testimony of witnesses in a hearing on misconduct charges. The district court held that no due process violation occurred. *Grandison v. Cuyler*, 600 F.Supp. 967, 975 (E.D.Pa.1984). We reverse.

I.

At lunchtime, on January 24, 1982, a disturbance took place in cell block C at Graterford. According to the prison officials, this disturbance occurred when approximately fifty inmates armed them-

selves with weapons and assaulted officers. One prison official, Corrections Officer Horwitz, identified Grandison as having taken part. Grandison's affidavit in opposition to defendants' motion for summary judgment alleges that he was not a participant in the disturbance.

It is undisputed on the summary judgment record that on the afternoon of January 24, 1982, Grandison was withdrawn from the general prison population and confined to his cell. Thereafter, Horwitz filed a misconduct charge against Grandison, charging him with four class 1 infractions, which included: possession of or introduction of contraband or implements of escape; tampering with, destroying or damaging property; and rioting or inciting a riot.

On the following day, January 25, 1982, while he was still locked up in his cell and before he was shown a copy of Horwitz's charges, Officer Stokes visited Grandison and informed him that disciplinary charges had been filed against him, and that he would be permitted to choose an inmate representative to aid him in the disciplinary hearing on those charges. Stokes also informed Grandison that he could request that witnesses be called on his behalf. Grandison was presented with Pennsylvania Bureau of Corrections Form JBC–141D, entitled "Inmate Request for Representation and Witnesses." The form states:

> You have been charged with a misconduct. You may request the assistance of any inmate of general population status or a staff member for the hearing. If you wish assistance state the name of the individual here.

Joint Appendix at 51. There is a single line for insertion of the name of the person desired for assistance. There is no indicated space for the inmate number of that person, and no indication of any requirement that such a number be furnished. On the form the name Calvin Johnson is inserted in block lettering, followed by the indication, in similar block lettering "# Unknown," and also the indication "M 2240." Below the line containing Calvin Johnson's

name, in what appears to be different handwriting, is the indication "M 2240–was present." Form JBC–141D also contains a block captioned "This Section to be Completed by Inmate." Below the caption appear the designations, "Name of Witness," "Institution Number" and "Present at Scene?". Listed in this block is the name Charles Moore. In the column headed "Institution Number" appears a question mark, a number which is crossed out and illegible, and the number "M 2204." *Id.* Grandison signed the form.

From the face of the form it is impossible to tell when the number M 2204 was inserted. It is undisputed that Grandison told Stokes he wanted to call inmate Charles Moore as a witness, that he did not know Moore's number, but that he believed it might be M 2204. It is also undisputed that Grandison was informed by Stokes that a failure to sign the form on January 25, 1984 would constitute a waiver of his right to call witnesses.

The following morning, Grandison was moved to solitary confinement. Slightly more than three hours after being so confined, he was for the first time given a copy of the misconduct charge filed by Officer Horwitz. Three days later a hearing was scheduled on that charge. In the interim, neither Grandison nor Johnson, the designated inmate assistant, was permitted to speak with Charles Moore. Moreover, Johnson was afforded only five minutes with Grandison to prepare for the hearing.

Grandison's uncontested affidavit establishes that at the hearing he and Johnson learned for the first time that Moore would not be present. Both protested, but were advised that an inmate with the number M 2204, one Randy Griffith, had been transferred out of Graterford in July of 1979, approximately two and one-half years prior to the January 24, 1984 incident. It is undisputed, however, that Charles Moore, whose number is M 2804, was in Graterford at the time of the incident and at the time of the hearing.

■ Grandison's affidavit in opposition to the motion for summary judgment avers:

> Had Charles Moore been present and permitted to testify before the Hearing Committee, he would have stated that he observed me during the events of January 24, that I never refused an order to lockup; that I never armed myself with any wooden board; and that I never rioted or incited to riot.

Joint Appendix at 147. There is no conflicting affidavit. Nor do the defendants aver that any inquiry was made of Charles Moore about Grandison's role, if any, in the January 24, 1982 incident. Thus, for purposes of summary judgment, we must take it as undisputed that Moore is a witness who would, if called at the hearing, have offered exculpatory testimony.

The hearing committee found Grandison guilty of all of Horwitz's misconduct charges except a charge of destruction of property. He was sentenced to six months in solitary confinement (disciplinary custody—maximum). Joint Appendix at 92. Grandison appealed the hearing committee's decision to the Program Review Committee, which affirmed the hearing committee's decision. Joint Appendix at 54.

On May 12, 1982 Grandison filed a pro se section 1983 complaint on the form specified for that purpose by the Eastern District of Pennsylvania. In the section provided for a statement of claim, he alleged:

> Defendants can in no way show justification for subjecting plaintiff to illegal confinement. Defendants purpose is intended to discriminate against plaintiff, cause injury to plaintiff, make plaintiff suffer mental anguish and emotionally depress him, impair his health.

Joint Appendix at 30. Grandison sought compensatory and punitive damages, and injunctive relief. He also moved for leave to proceed in forma pauperis and for the appointment of counsel. In support of his motion for leave to proceed in forma pauperis and for the appointment of counsel, Grandison filed a two and one-half page handwritten statement, in which he disclosed the details of this grievance; specifically, he stated that he was unable to prepare for the hearing and to present his case because the prison officials refused to let him consult with his chosen representative for more than five minutes and to let him call the witness he had designated. The court appointed counsel.

On May 19, 1983, the state defendants moved for summary judgment. That motion was supported by affidavits of Officers Horwitz, Kooker, and Howard. Horwitz's affidavit addresses the misconduct charge. Kooker is a records custodian and his affidavit merely authenticates certain Graterford records. Howard was chairman of the hearing committee, and his affidavit discloses the results of the committee's deliberations. None of these affidavits addresses the contention that Grandison was given only five minutes with his chosen representative prior to the hearing, or the contention that Grandison was unable to call Moore as a witness. The defendants' brief in support of the motion for summary judgment addresses the latter contention as follows:

> BC–ADM 801 explicitly leaves to the assessment of prison officials the decision of what particular witnesses will be permitted to testify at a disciplinary hearing. In any event, the witness requested by plaintiff, Inmate # M–2204, was not available to testify at the January 28, 1982 misconduct hearing because he was not at SCIG. In fact, SCIG records reveal that # M–2204 was transferred to the State Correctional Institution at Camp Hill prior to the incident presently before the Court (see documents attached hereto and marked as Exhibit "D–7" and Exhibit C, paragraph 6).

Joint Appendix at 66. The memorandum does not discuss the fact that Moore was at Graterford, or the reasons, if any, for allowing Grandison only five minutes for consultation with his chosen inmate advocate.

Grandison, through counsel, responded to the motion for summary judgment with an affidavit and a memorandum of law.

The memorandum refers to several violations of the procedures specified in Directive 801 for conducting hearings on misconduct charges. Grandison's affidavit specifically addressed the contention that he was given only five minutes for preparation with Calvin Johnson, that neither he nor Johnson were permitted to speak to Moore, and that Moore was not called as a witness. Joint Appendix at 110–37; 142–48. The state defendants filed no response to this affidavit.

Thus, on the summary judgment record, no sworn explanation has been tendered by the state defendants for the short time allowed Grandison and Johnson for preparation for the hearing or for the refusal to let Grandison call Moore as a witness. No state defendant has sworn that the Graterford authorities were unaware of Moore's presence in Graterford, and no state defendant has advanced, sworn or unsworn, any security justification for not calling Moore or for not permitting more time for preparation. No affidavit or other submission tendered any explanation for requiring Grandison to designate witnesses before he received a copy of the misconduct charges.

The Magistrate to whom the summary judgment motion was referred for a recommendation and report recommended that the motion be granted. The district court adopted that recommendation and granted the motion. 600 F.Supp. at 976.[1] This appeal followed.

## II.

█ Directive 801 contains the Pennsylvania regulations governing administration of state prisons. *See* Bureau of Corrections Administrative Directive 801, 37 Pa. Admin.Code § 93.10 (Shepard's 1978). It has been definitively resolved that Directive 801 creates for prisoners a state law liberty interest in remaining in the general prison population that is protected by the due process clause of the fourteenth amendment. *Hewitt v. Helms,* 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). Thus misconduct determinations which may result in the deprivation of that liberty interest must be conducted in a manner which comports with the minimum federal due process standards.[2]

Our starting point for determining the content of these standards is *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), for in *Hewitt v. Helms,* the Supreme Court held that *Wolff* was the appropriate referent. 459 U.S. at 467, 103 S.Ct. at 869. In *Wolff* the Supreme Court held that a prisoner facing a misconduct hearing "should be allowed to call witnesses ... in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. at 566, 94 S.Ct. at 2979. The Court cautioned that an "unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution." *Id.* Thus, according to the Court, "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority...." *Id.* What can be gleaned from *Wolff,* therefore, is that the prisoner's interest in having possibly favorable witnesses at a misconduct hearing must be weighed against the state's competing interest in preventing disruption or reprisal or undermining authority. These are all interests related to prison security and correctional goals.

The *Wolff* standard for this due process balancing was refined further in *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). There the Court rejected the Ninth Circuit view that due process

---

1. The court also denied Grandison's motion to amend his complaint. 600 F.Supp. at 975–76.

2. *Drayton v. Robinson,* 719 F.2d 1214, 1218–19 (3d Cir.1983) holds that federal standards of due process, not the procedural schema set out in Directive 801, are determinative in a section 1983 action.

required that prison officials must give to prisoners denied the privilege of calling witnesses a written statement of reasons for such denial. *Id.* at 322, 96 S.Ct. at 1559. Thus, the *Baxter* Court explained that the *Wolff* Court's reference to providing such a statement of reasons, *see* 418 U.S. at 566, 94 S.Ct. at 2979,[3] simply constituted a suggestion of the better practice, not a requirement of due process. 425 U.S. at 321, 96 S.Ct. at 1559.

■ More recently still, the Supreme Court in *Ponte v. Real,* — U.S. —, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985), refined the *Wolff* standard further. *Ponte v. Real* was before the Court on certiorari from the Supreme Judicial Court of Massachusetts. Justice Rehnquist wrote for the Court:

The question is exactly that posed by the Supreme Judicial Court in its opinion: "whether the Federal due process requirements impose a duty on the board to explain, in any fashion, at the hearing or later, why witnesses were not allowed to testify." 390 Mass., at 405, 456 N.E.2d at 1115. We think the answer to that question is that prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but that they may do so either by making the explanation a part of the "administrative record" in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a "liberty" interest is challenged because of that claimed defect in the hearing. In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it "later." Explaining the decision at the hearing will of course not immunize prison officials from a subsequent court challenge to their decision, but so long as the reasons are logically related to preventing undue hazards to "institutional safety or correctional goals," the explanation should meet the Due Process requirements as outlined in *Wolff.*

*Id.* at 2196. Thus, it is now clear that a prehearing written statement of reasons for refusing to call witnesses is not required, but that an explanation for refusing to call witnesses which is logically related to institutional safety or correctional goals must be tendered at some point. The Supreme Court explained why such explanation must be forthcoming, stating that

to hold that the Due Process Clause confers a circumscribed right to call witnesses at a disciplinary hearing, and then conclude that no explanation need ever be vouched for the denial of that right, either in the disciplinary proceeding itself or if that proceeding be later challenged in court, would change an admittedly circumscribed right into a privilege conferred in the unreviewable discretion of the disciplinary board. We think our holding in *Wolff, supra,* meant something more than that.

*Id.* at 2197.

*Ponte v. Real* also expressly rejected the Massachusetts petitioner's contention that the burden of establishing an arbitrary and capricious denial of the right to call witnesses should be placed on the prisoner. Noting that successful challenges to prison officials' refusals to call witnesses would be infrequent, Justice Rehnquist wrote,

But the fact that success may be rare in such actions does not warrant adoption of the petitioner's position, which would in effect place the burden of proof on the inmate to show why the action of the prison officials in refusing to call witnesses was arbitrary or capricious. These reasons are almost by definition unavailable to the inmate; given the sort of prison conditions that may exist, there may be a sound basis for refusing to tell the inmate what the reasons for denying his witness are....

But there is no reason for going further, and adding another weight to an already heavily weighted scale by requiring an inmate to produce evidence of

for refusing to call a witness...." 418 U.S. at 566, 94 S.Ct. at 2979.

which he will rarely be in possession, and of which the superintendent will always be in possession.

*Id.*

Central to *Wolff, Baxter,* and *Real* is the nature of the state's interest that can justify a refusal to call witnesses. In each of these cases, the Court declared that prison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals. No other interests have ever been recognized by the Supreme Court as sufficient to justify such a denial. What *Real* clarifies is that the burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners.

■ *Wolff v. McDonnell,* also recognizes the right of certain inmates to seek the aid of a fellow inmate or other adequate substitute to collect and present evidence necessary for an adequate comprehension of the case. 418 U.S. at 570, 94 S.Ct. at 2981. The officials at Graterford, so far as the summary judgment record discloses, determined that Grandison was an inmate entitled to such assistance. But the summary judgment record also discloses that Grandison was given only five minutes prior to the hearing to confer with the designated assistant. Recognizing that the right to such assistance may be qualified by the state's interest in security and correctional goals, but that information about such matters is not in the hands of prisoners, we conclude that the burden of proof specified in *Real* for justification of the refusal to call witnesses also applies for justification of limits placed by the prison officials on the opportunity of charged prisoners to confer with their designated assistants.

The caselaw in the Third Circuit is consistent with the Supreme Court's refinements in *Wolff* through *Real* of the due process standards applicable to prison disciplinary proceedings. Directly on point is our decision in *Woods v. Marks,* 742 F.2d 770 (3d Cir.1984), a case arising out of the very same January 24, 1982 incident at Graterford which gives rise to this case. Inmate Woods, when presented with Form JBC–141D, listed only the inmate number not the name of the man (William Corley) he desired to have called for a witness. Woods reiterated his call for the witness at the hearing, to no avail, and he was sentenced to a term in solitary confinement. He filed a section 1983 action, and the district court granted summary judgment. This court reversed. We wrote,

> We are persuaded that the Supreme Court in *Wolff* did not intend to limit judicial review of prison officials' exercise of discretion to the extent that a prisoner's limited right to call witnesses could be arbitrarily denied in any case and thereby be rendered meaningless. On the contrary, *Wolff* contemplated a *balancing* of "the inmate's interest in avoiding [disciplinary sanctions] against the needs of the prison...." *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2980. Before prison officials can engage in the requisite balancing analysis, they should, at the very least, "look at each proposed witness and determine whether or not he should be allowed to testify."

*Id.* at 774 (quoting *Hayes v. Walker,* 555 F.2d 625 (7th Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977)). The subsequent decision in *Ponte v. Real,* confirms that our reversal in *Woods v. Marks* was proper.[4] Moreover, it is clear that *Woods* is indistinguishable from this case.

## III.

■ Our survey of the summary judgment record in Part I above establishes that neither in the administrative record nor in the affidavits in support of summary

---

4. *Woods v. Marks* contains dicta that "[o]rdinarily, we presume that prison officials refuse to call witnesses for legitimate reasons consistent with the due process requirements for disciplinary hearings established in *Wolff.*" To the extent that this dicta suggests that the prisoner has the burden of overcoming such a presumption, it is inconsistent with the holding in *Ponte v. Real,* that the burden of justification is on the prison officials.

judgment do the defendants tender any security or correctional goal justification for refusing to call Moore as a witness, or for allowing Grandison only five minutes to confer with Calvin Johnson. Indeed, no explanation is tendered either in the administrative record or in the summary judgment record for requiring Grandison to designate witnesses before he saw the misconduct charge.[5] The defendants had the burden of going forward on those issues. *Ponte v. Real,* 105 S.Ct. at 2197. Because the defendants failed to meet this burden the summary judgment cannot stand. The judgment appealed from therefore will be reversed.

---

**5.** *Wolff* requires that a prisoner receive a written notice of charges "in order to inform him of the charges and to enable him to marshall the facts and prepare a defense." 418 U.S. at 554, 94 S.Ct. at 2973.