979 F.2d 858
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 James Edward CLAYTON, Plaintiff-Appellant,
v.
Larry MEACHUM, Director; Gary D. Maynard, Warden; Jim
Sorrels; Bobby L. Boone, Major; W.W. Malone, Case Manager;
Bobby Bryant, Unit Supervisor, Their successors in
interest, agents, servants and employees, individually and
in official capacity; James L. Saffle; Steve Hargett;
Jimmy Martin; Danny Nace; John Doe; Joe Doe; Ray Doe;
Bob Doe; Rob Doe; Say Doe, Defendants-Appellees.
 No. 92-7098.
 United States Court of Appeals, Tenth Circuit.
 Nov. 13, 1992.
 
 Before JOHN P. MOORE, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 Mr. Clayton, an inmate in a state prison and a pro se litigant, appeals the grant of an adverse summary judgment in his § 1983 case.[1] We reverse and remand.
 
 
 2
 This case has a lengthy history. Mr. Clayton commenced this litigation in 1987 when he sued six penitentiary officials alleging retaliation for exercising his rights to access the court, to petition the government for redress, and to file lawsuits. Mr. Clayton supported these allegations with factual statements. The trial court ordered a Martinez report which set forth a factual statement differing from Mr. Clayton's. The trial court, utilizing the facts as set forth in the Martinez report, concluded Mr. Clayton's suit was frivolous and dismissed. In 1990 this court reversed that decision, concluding it was error for the trial court to resolve disputed factual matters by relying upon the information contained in the Martinez report. See Clayton v. Meachum, No. 88-1084, Order & Judgment, Mar. 12, 1990.
 
 
 3
 Upon remand, the parties engaged in a war of motions. Insofar as is relevant to our decision, the penitentiary officials filed a motion for summary judgment, which was not supported by factual materials, asserting the defense of qualified immunity. Mr. Clayton, who had by this time amended his complaint, filed his motion for summary judgment, which was supported with numerous factual matters. The penitentiary officials responded by complaining that the length of Mr. Clayton's brief violated district court rules, and filed numerous evidentiary exhibits supporting their version of the facts.
 
 
 4
 The matter was referred to a magistrate judge who again resolved some factual disputes by the use of documents filed. The following quotation from the magistrate judge's report is illustrative:
 
 
 5
 Plaintiff admits that he was a "spokesman" for the inmates participating in the riot of December 17, 1985. For his participation, Plaintiff was found guilty by a vote of 3-0 of group disruption. Plaintiff makes the allegation that he was "not allowed witnesses, documents or other elements of due process." The Offense Report that Plaintiff received gave the description of the incident as follows: "On 12-17-85 at approximately 6:15 p.m., inmate James Clayton 73937, participated in a riot on Unit A, which resulted in substantial property damages and five hostages being taken." Thus, it contained the date, time, and activity. Clearly, this notice was more than adequate. A review of the Special Report reveals that the appropriate due process was afforded to Plaintiff. Plaintiff was given advance written notice of the charge, as well as an Inmate/Staff Representation Request Form. Plaintiff was permitted to use witness testimony at his hearing, and was furnished with a Disciplinary Hearing Action Form.
 
 
 6
 This report concluded by recommending the grant of the penitentiary officials' motion for summary judgment. Due process requires an inmate be given the opportunity to call witnesses and present documentary evidence. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). As the above reveals, the factual dispute was resolved in a conclusory fashion by the acceptance of one document over another, and, in particular, the magistrate judge credited defendants' statement that Mr. Clayton was allowed to call witnesses over Mr. Clayton's statement that he was not. The issue of Mr. Clayton's being denied the right to use documents was not addressed.
 
 
 7
 Objections were filed to the magistrate judge's report, and Mr. Clayton continued to file aggressively various motions which were referred to the magistrate judge. Ultimately, Mr. Clayton's amended complaint was ordered served, additional parties and claims were added, and Mr. Clayton continued to bombard the court and the penitentiary officials with a barrage of motions.
 
 
 8
 It is necessary to examine Mr. Clayton's amended complaint, which is thirty-eight pages in length and purports to set forth sixteen separate causes of action. The underlying factual foundation supporting this complaint commences with a prison riot wherein hostages were taken, guards were severely injured and property was destroyed. The prison officials imposed various disciplines upon Mr. Clayton for his "involvement" in this riot. Mr. Clayton's position is that he was a model prisoner and was not involved in the riot. He contends he merely acted as a spokesman for the hostage takers. Mr. Clayton alleges the disciplinary hearing was flawed. He contends there existed no substantial evidence; he was unfairly surprised by some of the evidence; he was denied access to the prison records; he was denied the right to call rebuttal witnesses; there was no written record; and his conduct was not proscribed by prison rules. Mr. Clayton also complains his property was stolen from his cell by two of the defendants when he was hospitalized; he alleges the defendants have court records necessary to his appeal which they are wrongfully withholding; he complains of being wrongfully held in administrative segregation; and he sets forth numerous additional similar complaints. It is important to note the amended complaint raises numerous issues that were not addressed by the magistrate judge in his initial report, nor could they have been as the amended complaint came thereafter.
 
 
 9
 The trial court, obviously weary of the flood of filings by Mr. Clayton, in a short order adopted the magistrate judge's findings and recommendations which concluded that summary judgment should be granted in favor of the penitentiary officials. The district court reasoned the amended complaint merely provided "more specificity" and did not recognize the additional causes of action. Mr. Clayton appeals this decision raising nineteen claimed errors of law.
 
 
 10
 This appeal illustrates most of, if not all, the problems inherent in pro se litigation. Mr. Clayton has obviously spent much time researching the law but has achieved an imperfect understanding of the many rights afforded him by the law. The penitentiary officials, rather than spend the time and money necessary to deal precisely with the litigation, resort to a shortcut by claiming qualified immunity while offering no case law to show Mr. Clayton's rights were not clearly established, i.e., meaningful access to the courts and minimum due process for prisoner discipline. Both parties throw numerous factual materials into the hopper, thus creating factual disputes. Mr. Clayton files numerous motions, many being frivolous. Against this backdrop and with little help from the parties, the magistrate judge attempted to sort the wheat from the chaff. The district judge then faced countless hours of reviewing all these matters de novo. We, in turn, receive this pile of paper and are expected to spend hours in an attempt to assure Mr. Clayton has been extended the rights to which he is entitled.
 
 
 11
 We now turn our attention to the record on appeal. In reviewing a grant of summary judgment, our review is de novo. We look first to see if there is a genuine issue of material fact. If we find none, we then look to see if the substantive law was correctly applied. Genuine issues of material fact do exist and the grant of summary judgment was improper.
 
 
 12
 We initially turn to Mr. Clayton's allegation that the administrative segregation was punishment for his filing of law suits. In Mr. Clayton's first appeal to this court Judge McKay, writing for this court, said:
 
 
 13
 In his affidavit, among other things, he has alleged that some defendants told him that administrative segregation was in effect punishment for filing lawsuits. This, among other matters, sets up a fact dispute which cannot be resolved on a motion to dismiss. In addition, much of what is contained in the Martinez report is merely conclusory and is not sufficient to overcome specific allegations or plaintiff's verified factual statements attached to his response to the Martinez report.
 
 
 14
 Clayton v. Meachum, Order & Judgmentat 3. Nothing was subsequently filed to remove this factual dispute. An affidavit stating Mr. Clayton was segregated for his own safety and welfare was subsequently filed. This fails to remove and, in fact, compounds the factual dispute into one involving reasons or motivation for Mr. Clayton's segregation.
 
 
 15
 Because we reverse and remand, we do not address all Mr. Clayton's asserted errors, nor do we identify all the factual disputes. We do reverse the summary judgment in its entirety for the reason that the magistrate judge failed to consider the allegations of the amended complaint and the factual material relating thereto that was offered by the parties.
 
 
 16
 The district court's conclusion that the amended complaint merely added specificity to the allegations of the original complaint is inaccurate, and to the extent it may be accurate, factual conflicts were created.
 
 
 17
 As Mr. Clayton is a pro se litigator, we suggest to counsel for the penitentiary officials that she can render invaluable aid to the district court by simplifying the issues. Mr. Clayton's verified complaint raises numerous issues. The first step should be to weed out those allegations that fail to state a claim. The second step should be to identify those issues that are supported only by conclusory allegations as opposed to facts. The third step is to try those issues remaining where there exists a genuine issue of material fact.
 
 
 18
 This court is fully cognizant of the burdens imposed upon the judiciary by the pro se litigator. Our dislike of these burdens does not justify shortcuts, nor does it excuse disbelief of the pro se litigant's verified facts. Factual disputes concerning genuine and material issues may only be resolved by the trier of fact; they may not be resolved by balancing an affidavit against a Martinez report.
 
 
 19
 The judgment of the district court is REVERSED and this matter is REMANDED for such further proceedings as may be just and proper.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument