Jerry Wayne SMITH, Plaintiff,

v.

Herb MASCHNER, et al., Defendants.

No. 84–3283–DES.

United States District Court,
D. Kansas.

Jan. 11, 1996.

Stephen W. Kessler, Topeka, KS, for plaintiff.

Jerry Wayne Smith, Oxford, WI, pro se.

Jon P. Fleenor, Kristy L. Hiebert, Office of the Attorney General, Topeka, KS, for defendant.

### *MEMORANDUM AND ORDER*

SAFFELS, District Judge.

This is a complaint filed pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 (1982) by plaintiff when he was a state prison inmate against numerous prison officials alleging violations of constitutional rights. On September 30, 1988, this court entered a Memorandum and Order granting defendants' motion for summary judgment, denying plaintiff's motion for partial summary judgment and dismissing the action. Plaintiff filed a Notice of Appeal and on March 29, 1990, the United States Court of Appeals, Tenth Circuit, entered its order affirming in part, reversing in part, and remanding. *Smith v. Maschner, et al.*, 899 F.2d 940. A pretrial was conducted

and time for the filing of dispositive motions was allowed. The matter is presently before the court upon defendants' motion for summary judgment and plaintiff's cross motion for summary judgment. Having considered the materials in the file, the court finds as follows.

From prior opinions and the pending cross-motions for summary judgment, the uncontroverted facts for the purpose of these motions appear to be as follows.

1. At all times relevant to this action, plaintiff was an inmate at Lansing Correctional Facility, Lansing, Kansas, and defendants were officers or employees of the Kansas Department of Corrections.

2. On August 29, 1984, prison officials searched plaintiff's briefcase before he left his cellhouse for a trip to state court for a hearing. Smith then walked outdoors past numerous inmates in shackles to the bus taking him to court, at which point officials ordered him to submit to another search of his briefcase. Smith refused to open his briefcase, and officers then told him he would have to leave it at the prison if he did not submit to the search. Once in court, Smith informed the judge that he could not proceed without the papers in his briefcase. The judge ordered prison officials to retrieve the case from the prison. When the briefcase arrived, it was opened in court and the hearing proceeded.

3. Immediately upon his arrival back at the prison, officials placed Smith in administrative segregation. That same day, they informed him of disciplinary charges filed against him including two charges of disobeying an order, one charge of disrespect, and one charge of possession of unregistered personal property. He was charged on later dates with violating prison mail regulations and with misuse of state property.

4. One disciplinary report filed on August 29, 1984, charged plaintiff with disrespect, a Class II violation of K.A.R. 44–12–305, and was written by Dan Pettis (Case no. 1870). The final hearing was held on September 25, 1984. Plaintiff was found guilty and sentenced to 15 days of disciplinary segregation (with credit for time already served) as well

as forfeiture of three months good time credits.

5. A second disciplinary report was filed against plaintiff on August 29, 1984, for disobeying Officer Soper's orders to open his briefcase at the bus, a Class I violation of K.A.R. 44–12–304 written by Doug Soper (Case No. 1871). Plaintiff was found guilty on September 25, 1984, and sentenced to ninety days segregation and forfeiture of four months good time credits.

6. A third disciplinary report filed on August 29 charged plaintiff with improper registration and use of personal property, a Class II violation of K.A.R. 44–12–201, written by Daniel Young (Case No. 1872). Plaintiff was found guilty on September 25, 1984, sentenced to fifteen days of disciplinary segregation and forfeiture of fifteen days good time credits.

7. On August 29, 1984, plaintiff was also charged with disobeying Officer Ralls' orders to open his briefcase at the bus, a Class I violation of K.A.R. 44–12–304 written by Mike J. Ralls (Case No. 1873). He was found guilty on October 9, 1984 and sentenced to 90 days in disciplinary segregation plus forfeiture of 120 days earned good time credits.

8. On September 21, 1984, plaintiff was charged with violation of mail regulations, a Class II violation of K.A.R. 44–12–601(b), by Dan Pettis (Case No. 2056). The Board found him guilty and sentenced him to fifteen days of disciplinary segregation, to run concurrently with Case No. 1870.

9. One of the disciplinary hearings held on September 25, 1984, concerned the charge of acting disrespectfully towards correctional officer Dale Bohannon. Lt. Pettis testified at the hearing consistent with the facts set forth in his disciplinary report. Plaintiff requested three witnesses for the hearing including Bohannon. His request for Bohannon was denied.

10. On November 5, 1984, W.T. Madden filed a report against plaintiff for having five to six feet of rope made from torn bed sheets, (possibly remnants of a makeshift clothesline), a Class II violation of K.A.R. 44–12–208, misuse of state property (Case No.

2365). After a hearing on November 30, 1984, Smith was found guilty and sentenced to seven days of disciplinary segregation, to run concurrently with his "present sentence."

11. Thus, plaintiff was found guilty of all charges and sentenced to a total of seven months in segregation as well as the loss of at least thirteen months good time credits. Prior to this spate of infractions, Smith had a good institutional record. Smith has presented affidavits of coincidental transfers of a witness and a legal assistant, as well as evidence of an alleged pattern by defendants of blocking his access to legal materials and assistance.

12. Plaintiff filed two lawsuits in the District Court of Leavenworth County, Kansas which raised at least some of the issues presented in this action. In *Jerry Wayne Smith v. Herb Maschner, et al.,* 85–C–013, plaintiff presented the claim that he had been harassed because of his jailhouse lawyering activities and specifically complained of his placement in A & T on August 29, 1984. He asserted the violation of his constitutional rights, sought money damages and expungement of certain disciplinary reports. On April 11, 1986, Judge O'Keefe of the state district court entered findings of fact and conclusions of law including that the State had harassed plaintiff and denied his civil rights and that specifically he was harassed on August 29, 1984 when placed in A & T. However, the state judge further found that plaintiff had suffered no actual damage. It appears that this decision was appealed by defendant with a cross-appeal filed by plaintiff, that the appeal by the State was voluntarily dismissed, and that on Smith's cross-appeal the matter was affirmed in an unpublished opinion as noted at 762 P.2d 850 (No. 59536) (Kan.App.1988) (table); *cert. denied,* 490 U.S. 1072, 109 S.Ct. 2080, 104 L.Ed.2d 644 (1989). Maschner is the only defendant in that case who is also a defendant in the case before this court.

In the other civil action filed in state district court, *Jerry Wayne Smith v. Herb Maschner,* Case No. 85–C–108, Judge O'Keefe entered an order setting aside the disciplinary board's finding of guilt in plaintiff's disciplinary case no. 1872 involving unregistered jewelry, holding that the board's ruling was arbitrary and ordering a new hearing. The matter was stayed, and on appeal in an unpublished slip opinion the Kansas Court of Appeals found this holding to be error and reversed on this issue, Case No. 58,969 (July 30, 1987).

In the instant action, plaintiff initially sought restoration of his good time credits as well as compensatory and punitive damages and injunctive and declaratory relief. He has since waived his claim to restoration of good time credits that would have raised an exhaustion issue. *See Duncan v. Gunter,* 15 F.3d 989 (10th Cir.1994); *Smith v. Maschner,* 899 F.2d at 951; *see also Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). In any event, this claim has become moot due to his release from state prison.

On plaintiff's appeal of this court's dismissal of the instant civil rights complaint, summary dismissal of several of plaintiff's claims was affirmed. The claims remaining in this case are (1) that plaintiff was denied procedural due process in disciplinary case no. 1870 in that he was not allowed to call Bohannon as a witness and (2) that his right of access was violated by all the disciplinary charges initiated against him and the findings of guilty in that they were motivated by retaliation for his legal activities, and by other retaliatory acts.

In considering the parties' cross-motions for summary judgment, the court is guided by the following standards. Summary judgment is appropriate only when the evidence, construed in the light most favorable to the nonmoving party, shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). The moving party has the burden of showing the absence of a genuine issue of material fact, and this burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion

for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmoving party may not rest upon mere conclusory allegations or denials. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue for trial. *Abercrombie v. City of Catoosa, Okla.*, 896 F.2d 1228, 1230 (10th Cir.1990). Having reviewed the motions under these standards, the court finds as follows.

Right to Witness

During the hearing on the disrespect charge, Mr. Pettis accused Smith of showing disrespect towards Officer Bohannon and, in defense, Smith requested that Bohannon, the deputy director of the prison, be called as a witness. This request was denied by the hearing chairman, Major Lynch. The transcript of the disciplinary hearing shows that plaintiff had no other witnesses.

■ In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court held that a prisoner "should be allowed to call witnesses … in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." at 566, 94 S.Ct. at 2979. The scope of this right is limited by the special requirements of the prison setting and is committed to the sound discretion of prison officials, *Id.* Nevertheless, the circuit court found in remanding this case that the decision to deny Smith's request to question Bohannon, the "only other participant in this situation besides Smith and Mr. Pettis," … "effectively denied him any defense other than his own testimony," *Smith v. Maschner*, 899 F.2d at 946. After this express finding by our appellate court, it is frivolous for defendants to again argue in their second motion for summary judgment that there is no genuine issue of material fact or that plaintiff states only conclusory allegations as to this claim. Thus, the court immediately turns to defendants' more substantial argument that they are entitled to qualified immunity on this claim.

■ "The doctrine of qualified immunity provides that government officials 'generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'." *Rozek v. Topolnicki*, 865 F.2d 1154, 1157 (10th Cir.1989) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

■ Defendants point out that they asserted this defense in their answer and raised it in their first motion for summary judgment, but since it was not the basis for this court's order of dismissal, it was not addressed by the circuit court. They urge, it "remains to be resolved." The fact that this court did not dismiss on the basis of qualified immunity did not preclude the Tenth Circuit Court of Appeals from relying upon that ground to affirm dismissal of this claim. Instead, the circuit court was "free to affirm a district court decision on any grounds for which there was a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *Duncan v. Gunter*, 15 F.3d at 992; *Griess v. State of Colorado*, 841 F.2d 1042, 1047 (10th Cir.1988). The U.S. Supreme Court has indicated that when the issue whether constitutional rights allegedly violated were "clearly established" for purposes of qualified immunity under *Harlow v. Fitzgerald*, is a "purely legal question," it is appropriate for resolution on appeal. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2818, 86 L.Ed.2d 411 (1985). Thus, it may well be that this defense has already been rejected at both the district and circuit court levels. Consequently, this court at this juncture in this ancient case would be reluctant to dismiss this action on this basis unless it was explicitly shown to be a valid defense under the facts.

■ Defendants assert that they are entitled to qualified immunity because plaintiff's due process right to call Bohannon as a witness was not "clearly established" at the time of the 1984 disciplinary hearing. In support of this assertion, defendants cite two cases: *Fox v. Coughlin*, 893 F.2d 475 (2d Cir.1990) and *Langton v. Berman*, 667 F.2d

231 (1st Cir.1981). While these cases certainly upheld the denial of "additional" witnesses in prison disciplinary proceedings, they are in "stark contrast" to cases such as this where all requested witnesses were denied. Moreover, the cited cases were not the origin of the inmate's right to call witnesses. Instead, each court in those cases began their analysis with a recognition that the inmate's right to call witnesses had been clearly established in the much earlier case of *Wolff*. See, *Langton v. Berman*, 667 F.2d at 234 and *Fox v. Coughlin*, 893 F.2d at 478. Defendants in their motion even cite language from *Fox* that it "was well established at the time of the hearing that an inmate at a disciplinary hearing should be permitted to call witnesses ... when it would not be unduly hazardous to 'institutional safety or correctional goals'...." The hearings in *Fox* were held in November, 1983. The Court concludes that defendants do not offer sufficient case law to show that plaintiff's right to call Bohannon as a witness was not clearly established, *see Clayton v. Meachum*, 979 F.2d 858, 1992 WL 336993 (10th Cir.1992) (unpublished).

■ Once the defense of qualified immunity has been raised, the plaintiff must come forward with facts sufficient to show that the law alleged to have been violated was "clearly established" at the time of defendants' actions. *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 645–46 (10th Cir.1988); *see also Stewart v. Donges*, 915 F.2d 572, 581 (10th Cir.1990). Plaintiff's attorney contends, as he must, that the right to call witnesses in disciplinary hearings was "clearly established" at the time of defendants' actions. Counsel for plaintiff cites several cases and the court has found others which indicate that an inmate's right to call witnesses was clearly established prior to defendants' actions. *See McCann v. Coughlin*, 698 F.2d 112, 124 (2d Cir.1983) (inmate's right to call witness in disciplinary proceeding established by 1979); *Grandison v. Cuyler*, 774 F.2d 598, 605 (3d Cir.1985) (officials failed to meet their burden of showing any security or correctional goal justification for refusing to call inmate's witness); *King v. Wells*, 760 F.2d 89, 93 (6th Cir.1985) (policy excluding witnesses under all circumstances

unconstitutional because *Wolff* requires prison officials to make individualized decisions); *Redding v. Fairman*, 717 F.2d 1105, 1114 (7th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984) (jury found due process violation because witness requests were denied without justification); *Graham v. Baughman*, 772 F.2d 441, 446 (8th Cir.1985) (*Wolff* clearly established that an inmate had at least a qualified right to call witnesses which could not be arbitrarily denied); *Bartholomew v. Watson*, 665 F.2d 915 (9th Cir.1982) (blanket proscription against the calling of certain types of witnesses in all cases violates due process); *Pino v. Dalsheim*, 605 F.Supp. 1305, 1314 (S.D.N.Y.1984) ("inconceivable" that defendants continue to insist that law unclear in 1981 concerning inmate's right to call witnesses); *Jacobson v. Coughlin*, 523 F.Supp. 1247, 1255 (N.D.N.Y. 1981), *aff'd* 688 F.2d 815 (2d Cir.1982) (table), *cert. denied*, 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 75) (inmate's constitutional right to call witnesses was firmly established at time of 1981 hearing); *see also, Bourgeois v. Vincent*, 1992 WL 223883 (D.Kan.1992) (unpublished) (*Wolff* decision makes it clear that inmates have a limited right to call witnesses).

The simple answer to this defense is that the prisoner's right to call witnesses in a disciplinary proceeding which might result in the loss of good time was explicitly established in *Wolff* which was decided in 1974, approximately ten years prior to defendants' actions. *See Graham v. Baughman*, 772 F.2d at 446 (right to witness established by *Wolff* four years prior to incident). Additional research by this court has revealed no case holding that an inmate's right to call at least one or some witnesses was not clearly established after the holding in *Wolff*.

Also of note is that both parties indicate Department of Corrections administrative regulations were in effect governing the disallowance of witnesses requested at disciplinary hearings. K.A.R. 44–13–405a in effect at the time of plaintiff's hearings, provided:

Calling witnesses. (a) In determining whether to allow the inmate to call a witness from the prison population or from

among prison employees, the disciplinary board or hearing officer shall balance the inmate's interest in avoiding loss of good time, assessment of a fine or placement in disciplinary segregation against the needs of the prison.

The regulation then specifies thirteen categories of "needs" generally having to do with security or efficient or effective operation of the institution. Paragraph (b) provides:

> (b) The hearing officer or chairperson shall have broad discretion in permitting or denying the witness request. In exercising the discretion, the board or hearing officer shall balance the inmate's requests and wishes against the needs of the prison. The goal of the hearing board or officer shall be to conduct the fact-finding process in a manner leading to the discovery of the truth. (Effective May 1, 1984).

It appears to the court that the holding in *Wolff* was reflected in these regulations which required a balancing of "the inmate's interest in avoiding [disciplinary sanctions] against the needs of the prison" (418 U.S. at 566, 94 S.Ct. at 2980) when determining a prisoner's request for a witness in a disciplinary hearing.

The court concludes that plaintiff has met his burden of repudiating defendants' defense of qualified immunity by showing that the core right of a prison inmate to call witnesses at prison disciplinary proceedings, except for reasons related to institutional safety or correctional goals, was clearly established at the time of the actions complained of herein. Therefore, defendants' motion for summary judgment on qualified immunity grounds is denied.

■ Defendants argue that their subsequent inquiry in response to this suit revealed that the testimony of the denied witness, Bohannon, would have supported the charging officer's testimony and not plaintiff's. We agree with plaintiff that this is irrelevant to the question of whether the board's refusal to call this witness at the hearing was a denial of due process since this is not proffered as the disciplinary board's reason for denying this witness. As suggested by both parties, this might go to the question of damages which is not appropriate for summary judgment determination. A denial of due process without proof of actual injury may still be actionable for nominal damages. *Graham v. Baughman,* 772 F.2d at 447; *see also Pino v. Dalsheim,* 605 F.Supp. at 1318–1319.

■ In plaintiff's cross-motion for summary judgment, the court is asked to rule that defendants' denial of Bohannon as a witness was without sufficient legal justification. To determine this issue, we proceed to the fact question of why defendants denied plaintiff's witness request and the legal question of whether or not their reasons were sufficient. It has been difficult to discern exactly what were defendants' reasons for denying plaintiff's request for Bohannon as a witness. No affidavit in support of defendants' motion for summary judgment addresses the reasons for the denial and, reasons are not clearly stated as such or referred to explicitly in the administrative record or in defendants' motion for summary judgment. Defendants merely state in their motion that the "panel refused the plaintiff's request" and refer to the hearing transcript at pages 9 and 10. Those pages indicate that Smith requested Bohannon as a witness to which Lynch replied, "Mr. Bohannon does not wish to appear." When Smith objected, Ms. Moppin who was not a hearing board member stated, "He was called. He put in writing that he had conflicting things to do today and could not be present."

Plaintiff, in his motion for summary judgment, presents these quotes as the "sole reason" stated by the disciplinary board for refusing to call the staff witness. However, the court notes that on page 11 of the transcript, defendant Lynch cites page 40 of the Inmate Rule Book as providing that "The state shall not compel a witness to attend. . . ." The court further notes the same language in paragraph (f) of K.A.R. 44–13–405a, the regulation on calling witnesses. In addition, defendants cite a few of the institutional "needs" which may outweigh the inmate's right under the state regulation, but do not specify or argue that any were relied upon by the board. Since there is no clear

delineation of reasons in the materials before the court, and because the administrative record leads the court to believe that a factual dispute exists as to precisely what those reasons were, the court concludes that summary judgment would not be appropriate on this issue. Defendants shall be given their opportunity to explain their reasons by testimony in court.

■ The Supreme Court in *Wolff* suggested that providing a statement of reasons for denying a witness at the time of the hearing would be the better practice but did not hold it to be a requirement of due process. *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Eventually, the question arose of how a court was to determine whether a witness had been arbitrarily denied without a statement in the administrative record. This was resolved in *Ponte v. Real*, 471 U.S. 491, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985), where the Court ruled that

> prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but ... they may do so either by making the explanation a part of the 'administrative record' in the disciplinary hearing, or by presenting testimony in court if ... challenged.... In other words, the prison officials may choose to explain their decision at the hearing, or they may choose to explain it 'later.' at 497, 105 S.Ct. at 2196.

Thus, it is clear that a written statement of reasons in the administrative record is not required, but that an explanation for refusing to call a witness must be tendered at some point.

Defendants are forewarned that they shall have the burden at trial of going forward on this issue by explaining what their reasons were for denying the request of Bohannon as a witness. *Ponte v. Real*, 471 U.S. at 499, 105 S.Ct. at 2197. In *Ponte*, the Court expressly declined to place on the inmate the burden of proving that the denial of a request to call witnesses was arbitrary or capricious, because the reasons why prison officials refused to call witnesses requested by the inmate "are almost by definition not available to the inmate." *Id.*

Defendants' burden clearly includes proving at trial that the reasons for their denial of this witness were legally sufficient. In *Ponte* it was held that "so long as the reasons are logically related to 'institutional safety or correctional goals,' the explanation should meet the due process requirements as outlined in *Wolff*." In *Wolff* and *Real*, the Court discussed the nature of the state's interest that can justify a refusal to call witnesses and declared that prison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals. No other interests have ever been recognized by the Supreme Court as sufficient to justify such a denial. *Grandison v. Cuyler*, 774 F.2d at 604. *Ponte* clarified "that the burden of persuasion as to the existence and sufficiency of such institutional concerns [justifying the denial of an inmate's request to call witnesses] is borne by the prison officials, not by the prisoners." *Smith v. Massachusetts Dept. of Correction*, 936 F.2d 1390 (1st Cir.1991); *Grandison v. Cuyler*, 774 F.2d at 604.

Retaliation

■ Plaintiff's second remaining claim for relief is that he has been retaliated against for exercising his right of legal access as evidenced by the several disciplinary actions taken against him and other actions of defendants. Defendants move for summary judgment on this claim referring back to the Martinez report and asserting that plaintiff has yet to offer any facts in support of this claim. These arguments were already soundly rejected by the appellate court in its order of remand. That court found that the "circumstantial evidence in this case leads us to conclude that a jury could reasonably find that defendants retaliated against Smith for the exercise of his right of access to the courts," and that defendants' motives in this case are "seriously at issue." *Smith v. Maschner*, 899 F.2d at 949. The circuit court further stated

> We think Smith's evidence is sufficient to support an inference by a fair-minded jury that defendants took disciplinary action against him based at least in part on improper motives. Smith has supported

 

his allegations of retaliation by . . . circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants, and an alleged pattern by defendants of blocking his access to legal materials and assistance. *Id.*

A fact dispute was found to exist which cannot be resolved on summary judgment. Defendants' have filed nothing with their current motion for summary judgment which would remove this factual dispute. Nor have they offered any new arguments or evidence to show that summary judgment is now proper. Defendant's motion on this claim is accordingly denied.

■ Plaintiff is forewarned that, as pointed out by the circuit court, he will have the burden of proving at trial that "but for" the retaliatory motive, the incidents of which he complains, including the disciplinary action, would not have taken place. *Id.* Smith must prove that "the actual motivating factor" behind defendants' actions was retaliation for his litigation. *Id.* at 950.

Res Judicata

■ Plaintiff asserts in his cross-motion that he is entitled to summary judgment on his claim of retaliation because of the findings of harassment entered against defendant Maschner and the State of Kansas by the Leavenworth County District Court in Case No. 85–C–013. He asserts that full faith and credit must be given to these state court findings. The court has reviewed what was available of the state court record in case no. 85–C–013 and found it to be too confusing to support such a holding. Even though Judge O'Keefe entered a finding of harassment, he also found no damage to plaintiff. Moreover, on appeal the Kansas Court of Appeals stated that O'Keefe found no harassment. There are different parties and different claims for relief in the state case and the case before this court. For these reasons, plaintiff's motion for summary judgment on the issue of retaliation is denied.

IT IS THEREFORE BY THE COURT ORDERED THAT defendants' motion for summary judgment (Doc. #100) be and hereby is denied; that plaintiff's cross-motion for summary judgment (Doc. #107) be and hereby is denied; and that this matter be set for trial by jury beginning on Monday, March 18, 1996, at 1:30 p.m. in the Frank Carlson Federal Building at Topeka, Kansas, before the undersigned judge.

IT IS SO ORDERED.