USCA1 Opinion

 

 December 30, 1992 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1429 LLOYD MATTHEWS, Plaintiff-Appellant, v. PAUL RAKIEY, ET AL., Defendants-Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ____________________ Before Torruella, Cyr and Stahl, Circuit Judges. ______________ ____________________ Lloyd Matthews on brief pro se. ______________ Nancy Ankers White, Special Assistant Attorney General, and ____________________ Robert G. Brown, Counsel, Department of Correction, on Memorandum of _______________ Law in Support of Their Motion for Summary Disposition, for appellees. ____________________ ____________________ Per Curiam. In 1989, Lloyd Matthews, an inmate at ___________ Massachusetts Correctional Institution - Cedar Junction, filed a complaint, pursuant to 42 U.S.C. 1983 and state law, followed by two amendments to the complaint, against numerous prison officials, alleging, inter alia, due process violations with respect to several separate prison disciplinary proceedings. The district court granted summary judgment in the defendants' favor on these claims on May 29, 1990.1 We affirm, in part, and vacate and remand, in part. The district court wrote a 16 page memorandum and order, in which it detailed the factual underpinnings of the various disciplinary charges against Matthews and the rationale for its ruling. Except for its grant of summary judgment as a matter of law to the prison disciplinary board with respect to the board's refusal to grant Matthews access to a videotape of events of November 3, 1989, or to view it itself, we affirm the court's ruling of May 29th. We see no need to replicate the expressed rationale with which we agree. We write only to explain our disagreement with this one aspect of the court's ruling and to elaborate on some ____________________ 1. At the same time, the court denied summary judgment on other claims of excessive force and inadequate medical treatment, related to the episodes giving rise to, but distinct from, the claims anent the procedures used in the disciplinary proceedings. These related claims were later tried to a jury and returned in Matthews' favor. As such, they form no part of Matthews' present appeal. Our review is solely focused on the court's ruling vis-a-vis the conduct of the disciplinary proceedings. -2- other aspects, which, his brief reveals, Matthews has not understood. We recite here only the facts necessary to give context to those claims we have felt required further comment. Disciplinary Report No. 89-2221 Disciplinary Report No. 89-2221 _______________________________ In Matthews' view, he should not have been placed in the Awaiting Action Unit (AAU) on August 16, 1989, while his rehearing on Disciplinary Report No. 89-2221 (possession of marijuana and a weapon) was pending. He suggests this violates Mass. Regs. Code tit. 103, 421.07(2) (1986), which says that an inmate shall not be transferred to the Departmental Segregation Unit (DSU) for committing a specific punishable offense unless a disciplinary board has first found him guilty of that offense and imposed a sanction and the commissioner has found that the inmate poses a substantial threat (a) to the safety of others or (b) of damaging or destroying property or (c) of interrupting the operation of the prison if he is confined in the prison's general population. See also Parenti v. Ponte, 727 F.2d 21, ________ _______ _____ 24-25 (1st Cir. 1984) (holding that this regulation creates a liberty interest). He says that, because his rehearing on Disciplinary Report No. 89-2221 was still pending in August (and, therefore, the commissioner had not made the necessary finding), he could not be transferred to the DSU on the basis of that pending report. -3- The short answer is that Matthews was not transferred to ___ the DSU prior to the rehearing of Disciplinary Report No. 89- ___ 2221. He was not returned to the DSU until September 15, 1989, after the rehearing took place. Between August 16th _____ and September 15th, he was held in the AAU, which is "[a]n area ... designated by a superintendent in which a resident may be confined pending a hearing to determine whether such resident shall be transferred to a departmental segregation unit." Mass. Reg. Code tit. 103, 421.06(1) (1986). And, 430.21(1) (1987) provided: At the discretion of the Superintendent or his/her designee, and subject to any applicable review requirements, an inmate who is under investigation for a possible disciplinary offense, or who has been charged with or found guilty of a disciplinary offense, may be placed on awaiting action status at the institution where he/she is then confined. Such status may include more restrictive confinement as deemed appropriate by the Superintendent or his/her designee. Furthermore, Matthews had been mistakenly released prematurely from the DSU on August 11, 1989, when, in fact, his placement in the DSU as a result of an attempted assault on the prison law librarian (Disciplinary Report No. 88-4510) had been extended to January 1990.2 Granted, the ____________________ 2. Matthews was mistakenly released from the DSU on August 11th, before the proper officials were aware of the commissioner's decision to extend Matthews' DSU placement an additional 6 months because of Disciplinary Report No. 89- 2221. The commissioner may reject the recommendation of the department review board and set a proposed release date -4- commissioner had extended Matthews' expected release date ________ from his DSU placement for the attempted assault for an additional 6 months because of the marijuana and weapon incident. But, the DSU placement did not occur because of _________ _______ that later incident. And, as noted, a release date from the DSU is a projection only, which the commissioner may condition on, for example, the absence of disciplinary reports. Mass. Regs. Code tit. 103, 421.08(2) (1986).3 Matthews' rehearing on Disciplinary Report No. 89-2221 was held on September 13, 1989. Matthews alleged that the 124 days between the May 12th marijuana and weapon incident and the September 13th rehearing violated the requirement of Mass. Regs. Code tit. 103, 430.11(2) (1987) that "a hearing before the disciplinary board" be scheduled "within a reasonable time." Again, the short answer reveals the fallacy of Matthews' premise. Matthews received his hearing regarding the May ____________________ dependent on conditions of his own, such as the absence of disciplinary reports. Mass. Regs. Code tit. 103, 421.08(2) (1986). 3. We also note that on August 12th, the day after Matthews' mistaken release from the DSU, he was involved in a fight. This fact may also have played a part in his placement on AA status on August 16th. See Smith v. Massachusetts Dep't of ___ _____ _______________________ Correction, 936 F.2d 1390, 1397 (1st Cir. 1991) (where one of __________ the requisite substantive predicates for placing an inmate on AA status was present, there was no due process violation); Mass. Regs. Code tit. 103, 430.21(1) (1987) (prison official has discretion to place an inmate, who is under investigation for a possible disciplinary offense, on AA status). -5- 12th incident on May 18th, certainly "within a reasonable time" as contemplated by 430.11(2). On September 13th, he received a "rehearing" pursuant to his administrative appeal and the administrative regulations do not provide for any time constraints within which a rehearing must be held.4 ____________________ 4. Moreover, 430.23 (1987) provided that "[a]ll procedural time limits set forth in these rules and regulations are directory and may be waived by the Superintendent or the Commissioner or their designees." In any event, according to Matthews, the request for a rehearing was granted on June 24th and, according to the rehearing report, the rehearing was delayed until September 13th because of three continuances: the first, because Matthews had requested legal representation, the second, because the reporting officer was on vacation, and the third, because of "rescheduling." "The Disciplinary Officer may continue a hearing at his/her discretion." Mass. Reg. Code tit. 103, 430.11(2) (1987). The continuances appear to have been both authorized and legitimate. Even were a rehearing required to be heard "within a reasonable time," no _________ flagrant violation is apparent. And, in any event, we are unpersuaded by Matthews' claim of prejudice from the delay due to the unavailability of witnesses. In particular, with respect to Officer Bruce, Matthews suggests that his field drug analysis report should not have been accepted. Matthews cites Wightman v. ________ Superintendent, Massachusetts Correctional Inst., 19 Mass. __________________________________________________ App. Ct. 442 (1985), in which the court ruled that the unsworn statement of the reporting officer that he found in the inmate's possession an "unknown" substance which the officer "believed" to be angel dust was an insufficient ground for the board's finding of guilt. By contrast, in the present case, Officer Bruce provided a report which stated: On May 12, 1989 this Reporting Officer conducted a drug field test on four (4) rolled cigarettes confiscated from inmate Lloyd Matthews. The cigarettes were found to contain Marijuana and its Resin - a Class D Controlled Substance under 94C Sec. 31 MGL. -6- Disciplinary Reports Nos. 90-192, 90-206, 90-208, 90-233 Disciplinary Reports Nos. 90-192, 90-206, 90-208, 90-233 ________________________________________________________ Contrary to Matthews' contention, the board's findings of guilt on these reports were not constitutionally defective because, in each case, the board relied on the report of the reporting officer without other corroborating evidence. Most of the cases cited by Matthews involve instances where a disciplinary board merely incorporated a reporting officer's report, and instances where, in addition to mere incorporation, the report, in turn, contained a mere recital of the reporting officer's conclusion that an unidentified informant was reliable. Some courts have determined that a board's finding of guilt is defective in these instances on two grounds: a) because a statement such as - "Based on the reporting officer's report, we find the inmate guilty" - does not specify the evidence upon which the board relied in finding guilt5 and b) there is no indication that the board ____________________ The board is not bound by courtroom rules of evidence, Mass. Regs. Code tit. 103, 430.13(3) (1987), and the instant case is distinguishable from Wightman such that the board's ________ acceptance of Bruce's report despite his unavailability for questioning by Matthews was permissible. 5. Courts rely on the teaching of Wolff v. McDonnell, 418 _____ _________ U.S. 539, 563 (1974), that due process requires, inter alia, "a written statement of the factfinders as to the evidence relied upon." -7- made its own independent determination of the informant's credibility.6 By contrast, the board's findings in each instance in this case reflected no such shortcomings. First of all, no informant information was involved in any of the incidents. Each disciplinary report reflected an eyewitness account of the reporting officer. Second, although the board's report of the disciplinary hearing indicated, in each instance, that the "Board based guilt on the eyewitness testimony as recorded in the officer[']s report," that "STATEMENT OF EVIDENCE RELIED UPON TO SUPPORT FINDING, also specified, in each instance, the evidence in each report that, in the board's view, sufficed for a guilty finding.7 ____________________ 6. See, e.g., Nelson v. Commissioner of Correction, 390 __________ ______ ___________________________ Mass. 379, 393 (1983) The reliance by a disciplinary board on the secondary information of a reporting officer without any primary evidence of guilt being presented to the board, is to compound the prospect for abuse. To rely on such secondary information is simply to "rubberstamp" the disciplinary report and to delegate the decisionmaking to the reporting or investigating officer. (Citation omitted). 7. The findings of the board, in each instance, complied with regulatory, as well as constitutional, requirements. "If a guilty finding is reached, the disciplinary board shall prepare a written decision containing the following: (a) A description of the evidence relied upon in reaching the guilty finding;" Mass. Regs. Code tit. 103, 430.17(1) (1987). -8- Disciplinary Report No. 90-206: "Report clearly indicates that R/O [reporting officer] observed subject throw the meal tray against the unit wall." Disciplinary Report No. 90-192: "Report clearly indicates that R/O positively identified subject as the one who was encouraging a work stoppage and unauthorized group demonstration." Disciplinary Report No. 90-208: "Report clearly indicates that subject was insolent to R/O, disruptive in the unit, and verbally abusive and threatening to the R/O." Disciplinary Report No. 90-233: "Report clearly indicates that R/O observed subject threaten the block workers, encourage other inmates to follow his lead, resulting in Inmate Matthews assaulting a block worker, by throwing human feces on him." Matthews has also cited and attached, as an addendum to his brief, three unpublished memoranda and orders of Massachusetts superior court judges - Stokes v. Ponte, No. ______ _____ 90-463 (Mar. 21, 1990) (Zobel, J.); Greenwood v. Rakiey, No. _________ ______ 90-4154 (Jul. 17, 1990) (Bohn, J.); and Colantonio v. Vose, __________ ____ No. 90-4684 (Jul. 30, 1991) (White, J.). These decisions held that, when an inmate disputes the reporting officer's account of events, a disciplinary board cannot find a reporting officer's written report more credible than an inmate's live testimony, in the absence of the reporting officer's own live testimony. They conclude that, in sifting ____________________ "The evidence relied upon for the guilty finding and the reasons for the sanction shall be set out in specific terms." Mass. Regs. Code tit. 103, 430.17(2) (1987). -9- through contradictory testimony, a factfinder must assess the credibility of the witnesses, which it cannot do without the live presence of the witness. We pass the question of the persuasive weight accorded unpublished superior court memoranda and orders. In any event, in these decisions the inmates had testified and the board had to weigh the credibility of the reporting officers' written statements versus the inmates' live testimony. In Matthews' case, however, he pled not guilty, then expressly declined to provide any statement in his behalf. Each of the relevant hearing reports states in the section for SUMMARY OF INMATE TESTIMONY: States to prior experience with the D- Board - and he feels that his testimony is not always recorded properly - and for that reason he has no statement. In view of his failure to testify, this is not a situation where the board then had to assess the credibility of live testimony versus written statements. His apparent distrust of the accuracy of the recordation of his testimony does not alter that. Matthews would have it that in instances where the evidence consists of an accusation by a correctional officer based on personal observation and a bare "not guilty" plea by an inmate, the board could not find guilt, based on the written eyewitness account, in the absence of independent corroborating evidence. That is not the holding of the -10- caselaw he has cited and not the holding of the caselaw we have found. See, e.g., McLellan v. Acting Superintendent, __________ ________ ______________________ M.C.I., Cedar Junction, 29 Mass. App. Ct. 122, 125 (1990) _______________________ ("[T]he disciplinary report of Officer Belisle recounted his direct observation of the plaintiff passing a telephone to an inmate on disciplinary isolation, an action which, without any additional validation, may be deemed a violation of the rules."); see also Stokes v. Commissioner of Correction, 26 _________ ______ ___________________________ Mass. App. Ct. 585, 589 ("[T]he board refers in its decision to the officer's incident report, and a copy of the full report is appended to the decision. All of the officers' reports appear to be self-validating. Thus, although more explanation might have been preferable, in each such decision the board's rationale is revealed, and there is at least a basis for a reviewing court or agency administrator to understand how the prison board reached the decision."), further appellate review denied, 403 Mass. 1106 (1988).8 9 _______________________________ ____________________ 8. Again arguing that the board may not properly rely on the written statement of the reporting officer, Matthews argues on appeal that there was insufficient evidence to support the guilty finding on Disciplinary Report No. 88-4510 (the precipitating event for his initial placement in the DSU, i.e., the attempted assault on the prison librarian). That claim of insufficiency of evidence, however, was never made either in his original complaint, or in the later-allowed two amendments to the complaint. It was first raised in his opposition to defendants' motion for summary judgment and the district court did not address it in granting summary judgment. Thus, it was not properly presented to the district court and, concomitantly, not preserved for review on appeal. -11- Incident of November 3, 1989 Incident of November 3, 1989 ____________________________ We now turn to the only argument offered by Matthews which we find has merit.10 Late on the day of Friday, November 3rd, Matthews was notified of the commissioner's approval of the recommendation that he be released to the general population. He was transferred from the Segregation Unit to the Orientation Unit. There he was told that the 3 to 11 p.m. shift commander had not received his name as an inmate to be released, so he would not be released to the general population, but rather, confined to his cell until the following Monday. He then allegedly threw a cup of urine ____________________ 9. Finally, Matthews' contention that Disciplinary Report No. 90-283 should have been dismissed because it was not written within 24 hours of the incident, as per 430.08(2), is refuted by Smith v. Massachusetts Dep't of Correction, 936 _____ _________________________________ F.2d 1390 (1st Cir. 1991). "As these regulations [including 430.08(2)] embody only procedural time limits, they do not create the necessary liberty interest." Id. at 1397 n.11; ___ see also Mass. Regs. Code tit. 103, 430.23 (1987) ("All ________ procedural time limits set forth in these rules and regulations are directory and may be waived by the Superintendent or the Commissioner or their designees."). 10. Although Matthews filed an amended complaint relating to the events of November 3rd, he did not submit copies of any of the relevant disciplinary reports or a copy of the report of the disciplinary hearing to the district court. The following recital of facts is taken from copies of the relevant disciplinary reports submitted by the defendants in connection with a motion, filed on July 31, 1990, for summary judgment on the claims remaining after the ruling presently at issue. The district court, therefore, did not have copies of the relevant documents before it when it granted summary judgment on May 29, 1990. The description of events in the reports is in general agreement with, but is more detailed than, the description provided by Matthews in his complaint and related filings. -12- at a correctional officer. Thereafter, he refused to submit to being handcuffed and removed from his cell. Matthews tied bed sheets across the floor from his desk to his bedframe, apparently to trip anyone entering the cell. He also suspended a bed sheet, as a curtain, from floor to ceiling with bandaids and remained behind this curtain during much of the time attempts were being made to get him to step to the bars to be cuffed. A "move team" of officers sprayed mace and/or gas into Matthews' cell and then entered the cell. Matthews, still behind the sheet, allegedly "lunged" toward the door with a radio in his hand, which struck the shield carried by the first officer to enter ("the shield man"). Matthews was forcibly shackled and removed. Subsequently, a pen wrapped in gauze and tape at one end was found on the floor of Matthews' cell. In December 1989, Matthews filed an amended complaint which, inter alia, alleged that he had been charged with assault, attempted assault, and possession of a weapon.11 He added, as defendants, the members of the disciplinary ____________________ 11. According to the later-submitted disciplinary reports, he was charged with, inter alia, assault in connection with the precipitating incident, i.e., allegedly throwing urine at the officer, assaulting or threatening the shield man with the radio, and possession of a weapon, i.e., the pen, which the reporting officer concluded was a weapon because the gauze and tape on the end was a handle. This officer also stated that the pen had been in Matthews' hand as the move team entered the cell. -13- board that considered these charges. He said that the forced extraction had been videotaped by the prison officials (as is apparently the norm), that he had never assaulted or attempted to assault the officers and that the video would show what happened, but that the disciplinary board refused to view the video or allow his legal representative or himself to view the video. He said that he was sanctioned 15 days' isolation for each disciplinary report written by the prison officers. The members of the disciplinary board moved to dismiss or, in the alternative, for summary judgment. As noted, supra, footnote 10, they, too, failed to submit the _____ underlying disciplinary reports or the record of the disciplinary hearing to the district court. They merely contended, without supporting documents, that the evidence presented at the disciplinary hearing satisfied both federal and state constitutional standards, that, unlike a criminal prosecution, an inmate is not entitled to a full panoply of rights, and "[a]s a result, the plaintiff had no right to exculpatory evidence, liberal discovery, etc...." In opposing the defendants' motion for summary judgment, Matthews said that the board, in denying his request to produce the tape, indicated that it would not use the tape against him. His claim, however, was that the tape was exculpatory in that it would show that he was not violent and -14- never assaulted or attempted to assault the "move team." He cited Mass. Regs. Code tit. 103, 430.14(4) (1987), (which gives discretion to the chairperson to deny an offer of evidence in the interests of, inter alia, personal safety, institutional security, relevance, cumulativeness and repetitiveness) and said that the board's denial was based on other than personal or institutional safety. The district court granted summary judgment, as a matter of law, to the defendant board members with respect to Matthews' claim about the board's refusal to grant Matthews access to the videotape or to view it at the hearing, on the ground that the discipline review board is not required to accept or grant access to any evidence at a disciplinary hearing. This statement is erroneous,12 since an inmate facing a disciplinary hearing that may result in the loss of a liberty interest must receive, inter alia, "an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present documentary evidence in his defense." Smith v. Massachusetts Dep't of Correction, _____ _________________________________ 936 F.2d at 1398-99 (quoting Superintendent, Massachusetts _____________________________ Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985)). ___________________ ____ Moreover, "'the burden of persuasion as to the existence and sufficiency of such institutional concerns [justifying the ____________________ 12. We review the grant of summary judgment de novo. See, ____ e.g., Rodriques v. Furtado, 950 F.2d 805, 808 (1st Cir. ____ _________ _______ 1991). -15- denial of an inmate's request to call witnesses] is borne by the prison officials, not by the prisoners.'" Id. at 1399- ___ 1400 (quoting Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. _________ ______ 1985)). And, in Smith, we found that a request for discovery _____ of an item that appeared particularly important to, indeed may have been dispositive of, a defense "stands on the same footing as a request to call witnesses." Id. at 1401 ___ (footnote omitted). We conclude, therefore, that the district court's grant of summary judgment in favor of the defendant/disciplinary board members was, at best, premature. The defendants' flat- out contention, endorsed by the district court, that Matthews was not entitled to exculpatory evidence is wrong as a matter of law. The board may decline to accept evidence in the interests of institutional security and correctional goals or for other reasons set forth in 430.14(4), such as relevance or cumulativeness. Wolff v. McDonnell, 418 U.S. at 566-67. _____ _________ And, it may be that the board would have been within its discretion to do so here. But, we just do not know.13 In ____________________ 13. It does not appear from the record before us that the precipitating event, i.e., the alleged assault on an officer by throwing urine at him, was recorded on the videotape. Rather, the tape reveals what occurred once the prison officials made the subsequent decision to extract Matthews from his cell. Matthews suggests, nonetheless, that it shows officers in close proximity to his cell after this alleged assault and before his extraction and that they would not have positioned themselves so if he, in fact, had thrown urine. We leave to the district court for further consideration what relevance, if any, the tape had to events -16- failing to even argue that the board denied Matthews' request for a legitimate reason, much less provide supporting documentation, the board members failed to show that they were entitled to judgment as a matter of law. See Ponte v. ___ _____ Real, 471 U.S. 491, 496-97 (1985) (due process may require ____ prison officials to explain, in a limited manner, either at the disciplinary hearing, or in a later court challenge, the reason why witnesses were not allowed to testify). We, therefore, vacate the district court's order of May ______ 29, 1990, insofar as it granted summary judgment in favor of the defendant members of the disciplinary review board on Matthews' claim that he was unlawfully deprived of access to potentially exculpatory evidence before the board, i.e., the videotape depicting events of November 3, 1989. We remand ______ for further proceedings, in which the defendants may again move for summary judgment if, in their view, they are able to carry their burden on this issue. In all other respects, we affirm the district court order of May 29, 1990. ______ Affirmed, in part, and vacated and remanded, in ________________________________________________________ part.14 _____ ____________________ not recorded therein. 14. In view of our disposition of this appeal, Matthews' "motion to allow affidavit in support of arguments in lieu of oral arguments" is denied as moot. -17-