**James P. GRAHAM, Appellant,**

v.

**Jack BAUGHMAN, Former Warden, Iowa State Penitentiary; Harold Farrier; George Potts; John Sanders; and Correction Officer Downing, Appellees.**

**No. 84–2455.**

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1985.

Decided Sept. 6, 1985.

Rehearing Denied Oct. 9, 1985.

Richard H. Zimmermann, Iowa City, Iowa, for appellant.

Gordon E. Allen, Asst. Atty. Gen., Des Moines, Iowa, for appellees.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

James P. Graham filed suit under 42 U.S.C. § 1983 alleging that certain correctional officers and officials at the Iowa State Penitentiary violated his constitutional rights. The case was referred to a magistrate who found that defendants had violated Graham's procedural due process rights in conducting a disciplinary hearing, but rejected Graham's claim that defendants had been deliberately indifferent to his serious medical needs. The district court reviewed the magistrate's report and recommendation and agreed with the magistrate's resolution of the medical claim. The court rejected the magistrate's conclu-

sion on the due process issue, however, and Graham now appeals both rulings. We affirm in part, reverse in part, and remand for a determination of nominal damages and attorney fees.

While an inmate at the prison, Graham was served with a notice of disciplinary action which alleged that he had thrown burning material out of his cell and swept it into an existing fire. Graham gave Investigator Rick Barry the names of two eyewitnesses and three character witnesses he wished to call at the pending disciplinary hearing. Graham told Barry that the witnesses would support his story that he was not trying to create a larger fire but was instead merely attempting to keep burning papers away from his cell in order to prevent smoke from accumulating and asphyxiating him.[1] Graham stated that he was attempting to pass a can of soup to another inmate when he dropped it on the floor outside his cell. He reached out with a broom to retrieve it, and in doing so inadvertently contacted a piece of burning material which had been thrown from the tiers above his cell. Graham stated that he was trying to push the material away from his cell when he was observed by one of the correctional officers.

On September 5, 1978 a disciplinary hearing was held before defendants George Potts and John Sanders. The defendants denied Graham's request to call witnesses stating that they did not have time to listen to "a bunch of witnesses." The hearing lasted about a minute and a half. Based upon the charging officer's report, Graham was found guilty and placed in solitary confinement for ten days and thereafter put indefinitely in disciplinary segregation. He eventually spent a total of 113 days in this status.[2] It is undisputed that Investigator Barry failed to contact or interview any of Graham's witnesses.

---

1. The prison was in lockdown status in the aftermath of a riot. There were a great many fires which were started by inmates and burning material was being thrown from the upper level of cells to the lower level where Graham's cell was located.

2. Graham lost good time and was deprived of other privileges while he remained in segregation.

On December 19, 1978 Graham complained of a toothache. Several days later he was seen by a dentist who began root canal work by performing a pulpotomy on Graham's tooth.

The next day Graham again complained of pain in the area where the pulpotomy was performed. He was given ice and Tylenol 3 was prescribed to reduce the pain. Graham was told that he would not be able to see the dentist again for several days.

Subsequently, the pain from Graham's infected tooth became so intense that he attempted to pull the tooth with a pair of pliers given him by a correctional officer. He failed and broke the tooth off at the gum line. This action did allow the infection to drain, however, and the pain subsided. He continued to take Tylenol 3 and penicillin was prescribed for the infection. Graham never complained about the tooth after this incident, even though he saw the dentist twice in January of 1979. The root canal work was eventually completed and a temporary crown was placed on the tooth.

Graham thereafter filed the present lawsuit for damages against Warden Jack Baughman, Harold Farrier (Director of the Iowa Department of Corrections), and the two persons who presided at his disciplinary hearing, Potts and Sanders.[3] As stated, the matter was referred to a magistrate who held an evidentiary hearing on Graham's claims. The magistrate found that defendants Potts and Sanders had denied Graham a reasonable opportunity to present his defense at the disciplinary hearing and therefore awarded Graham damages of $1330.00. This amount was calculated on a per diem basis of $20.00 per day for the ten days Graham was in solitary confinement and $10.00 per day for the 113 days he spent in disciplinary segregation. The magistrate denied Graham's eighth amendment claim, finding that the two named defendants, Farrier and Baughman,

were not deliberately indifferent to Graham's medical needs.

The district court entered judgment for defendants on both of Graham's claims. On the due process issue, the court held that because of the riot and resulting heavy disciplinary caseload, defendants were justified in refusing to call Graham's witnesses.

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court established certain minimum due process rights which must be afforded prisoners in disciplinary proceedings. Among these requirements is an inmate's limited right "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566, 94 S.Ct. at 2979. While prison officials retain discretion to refuse to call witnesses "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases," *id.*, this discretion "is not unbounded." *Cardaropoli v. Norton*, 523 F.2d 990, 998 (2d Cir. 1975). Courts have recognized that the right to call witnesses is basic to a fair hearing and that there must be a legitimate reason for denying the prisoner this opportunity. *See Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979; *Woods v. Marks*, 742 F.2d 770, 773–74 (3d Cir.1984); *Redding v. Fairman*, 717 F.2d 1105, 1114 (7th Cir.1983), *cert. denied,* ── U.S. ──, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984); *Bartholomew v. Watson*, 665 F.2d 915, 918 (9th Cir.1982). *Cf. White v. Wyrick*, 727 F.2d 757 (8th Cir. 1984) (no right to compulsory process).

 Thus, prison officials may not arbitrarily deny an inmate's request to present witnesses or documentary evidence. *Ponte v. Real,* ── U.S. ──, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985). Moreover, the officials must at some point explain their reasons for refusing to grant

---

3. Also named in the suit was the charging officer. The magistrate found no liability on his part and Graham raises no arguments on appeal with respect to this officer. It should also be noted that Graham was paroled and is no longer an inmate at the penitentiary.

such a request.[4] Finally, the burden of proving adequate justification rests with the prison officials. *Id.*

■ With this background in mind we evaluate defendants' proffered reasons for denying Graham's request to summon witnesses in his defense. We have no trouble accepting the reason for excluding the three character witnesses. Defendants were well within their discretion in concluding that such evidence was either irrelevant or unnecessary.

Graham also sought to call the two inmates who were celled to the left and right of his cell. He asserts that they would have buttressed his claim that he was merely trying to keep burning material away from his cell rather than attempting to fuel a larger fire.

■ Defendants contend that such testimony was irrelevant and unnecessary because it was "merely corroborative" of Graham's story. However, as is many times the case with disciplinary proceedings, this was a swearing contest between the inmate and the charging officer. In such situations, the inmate "faces a severe credibility problem when trying to disprove the charges of a prison guard." *Hayes v. Walker*, 555 F.2d 625, 630 (7th Cir.) (quoting *Wolff*, 418 U.S. at 583, 94 S.Ct. at 2988 (Marshall, J., dissenting)), *cert. denied*, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977). "Merely corroborative" evidence is many times the most probative for it may substantiate and make credible an otherwise bald and self-serving position.[5]

Therefore, we cannot accept as legitimate these reasons for the refusal.

Nevertheless, the defendants do assert at least a colorable explanation for refusing to call the eyewitnesses. They contend that the disciplinary hearing took place in the aftermath of a riot and the resulting disciplinary caseload was extremely heavy.[6] Graham testified that the committee told him that they had no time to call "a bunch of witnesses." This rationale may have merit for "the inmate's right to present witnesses is necessarily circumscribed by the penological need to provide swift discipline in individual cases." *Ponte*, —— U.S. at ——, 105 S.Ct. at 2195.

■ However, while the interest in swift punishment may provide a legitimate reason for denying Graham's request in the context of his initial hearing, it lost its significance as time progressed and the emergency passed. Due process rights may sometimes be postponed, but they need not, and should not, be eliminated.

> [A]fter the immediate crisis is past, the relative importance of the inmate's interest in a fair evaluation of the facts increases and the state's interest in summary disposition lessens; indeed, in such cases, in the long run the state's interest in a just result is the same as the individual's. For in those cases neither the state nor the inmate has any valid interest in treating the innocent as though he were guilty.

---

**4.** The *Wolff* Court stated that it would be "useful" if the prison officials stated their reasons for refusing to call witnesses. *Wolff*, 418 U.S. at 566, 94 S.Ct. at 2979. But this was not made a requirement. *Baxter v. Palmigiano*, 425 U.S. 308, 322, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976). This led some courts to hold that where such a statement of reasons is not provided, the reasons for the refusal must appear in the administrative record. *E.g., Hayes v. Thompson*, 637 F.2d 483, 488 (7th Cir.1980). However, the Supreme Court recently held that this also is not a due process requirement and that prison officials may wait until the refusal is challenged in court to provide the rationale for their actions. *Ponte v. Real*, —— U.S. ——, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985).

**5.** "Apart from such witnesses and evidence, inmates have little else with which to attempt to prove their case or disprove that of the charging officer; they have no constitutional right to confront and cross-examine adverse witnesses, and counsel is typically not present at these hearings to marshal the inmate's case." *Ponte*, —— U.S. at ——, 105 S.Ct. at 2203 (Marshall, J., dissenting).

**6.** The disciplinary committee heard approximately 118 cases in the days shortly after the riot.

*LaBatt v. Twomey,* 513 F.2d 641, 646 (7th Cir.1975) (quoting *United States ex rel. Miller v. Twomey,* 479 F.2d 701, 717–18 (7th Cir.1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974)). *See Bruce v. Wade,* 537 F.2d 850, 854 (5th Cir.1976); *Jackson v. McLemore,* 523 F.2d 838 (8th Cir.1975); *Biagiarelli v. Sielaff,* 483 F.2d 508, 511 (3d Cir.1973).

■ In sum, while the initial refusal to call the witnesses at the hearing may have been justified by the rioting and the heavy disciplinary caseload, there is no evident excuse for not contacting the witnesses at some point and taking their statements. Such a course would have allowed the prison officials to evaluate the evidence at subsequent review proceedings and would have effectuated Graham's right to present his defense. Indeed, in these circumstances, interviewing the witnesses would have provided the necessary "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." *Ponte,* —— U.S. at ——, 105 S.Ct. at 2195 (quoting *Baxter v. Palmigiano,* 425 U.S. 308, 321, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976)). Since it is undisputed that Graham was neither allowed to present this testimony at his disciplinary hearing nor were his witnesses ever interviewed at any time by any correctional officer, we hold that Graham's procedural due process rights were violated.

Defendants assert they are nevertheless protected by qualified immunity. *See Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 555, 55 L.Ed.2d 24 (1978). We disagree.

■ Under *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. *Wolff,* decided some four years prior to the prison officials' actions here, clearly established that an inmate had at least a qualified right to call witnesses and

that this right could not be arbitrarily denied. We believe that defendants should have known that a one and a half minute hearing with no opportunity for Graham to present the substance of the eyewitness testimony, either at the hearing or at some reasonably early later point, would violate his right to have a meaningful opportunity to present his defense. As the magistrate noted, if the right to minimum due process means anything, it means that a hearing must be something more than a "formal ritual." The defendants should have known that, in order to provide Graham with a fundamentally fair hearing, they would have to make at least some attempt to investigate the possibility that Graham's version of the incident had merit. Their complete failure to even contact the eyewitnesses at any time deprives them of the protection of qualified immunity.

The magistrate awarded Graham $1330.00 in actual damages for the due process violation. Defendants contend that *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), precludes an award of damages since he has failed to prove actual injury resulting from the violation of his rights.

■ In order for a plaintiff in a § 1983 action to be entitled to compensatory damages for a violation of procedural due process, he must prove that the violation actually was the cause of his injury or deprivation. *E.g., id.; McCann v. Coughlin,* 698 F.2d 112, 126 (2d Cir.1983). In the context of this case, Graham had the burden of proving how much, if any, of the time he spent in solitary confinement and in disciplinary segregation was caused by defendants' violation of his due process rights.

■ After careful consideration, we conclude that Graham has failed to prove this causal connection. In the first place, Graham did not call either of the two eyewitnesses at the evidentiary hearing held by the magistrate nor did he take their depositions or affidavits. Thus, we are left to speculate as to exactly what they would have testified to concerning the fire inci-

dent and what effect their testimony might have had on the disciplinary committee.[7] Secondly, Graham was found guilty of several other major reports while -he was in disciplinary segregation, including possession of a lock pick, throwing medicine away, and threatening a correctional officer. Graham also received several minor reports while in segregation, including possession of a "jigger string." From the reports of the administrative segregation review committee, which reviews were conducted periodically to determine if Graham should be returned to the general prison population, it is unclear as to why Graham was continued in segregation. While the reports mention the seriousness of the conduct which precipitated his initial discipline, the committee also considered Graham's other rules violations in making its decision to continue Graham's segregation. Therefore, even were we to assume that Graham would have received a lesser sentence had he been allowed to present the eyewitness testimony, it is not possible to determine how much segregation time is allocable to the fire incident and hence how much is allocable to the violation of his due process rights. In these circumstances, we do not believe Graham has sufficiently proven that the failure to afford him due process was the cause of the time he spent in disciplinary segregation. An award of damages would thus "constitute a windfall, rather than compenstion." *Carey,* 435 U.S. at 260, 98 S.Ct. at 1050.

■ Nevertheless, "the denial of procedural due process should be actionable for nominal damages without proof of actual injury." *Id.* at 266, 98 S.Ct. at 1054 (footnote omitted); *Pollock v. Baxter Manor Nursing Home,* 716 F.2d 545, 547 (8th Cir. 1983) (per curiam). Therefore, we remand for the district court to make an award of nominal damages as well as an award of reasonable attorney fees.

■ Graham contends that the magistrate and district court erred in not holding defendants Baughman and Farrier liable for deliberate indifference to his serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (deliberate indifference to prisoner's serious medical needs constitutes a violation of eighth amendment).

As to this claim, the magistrate held:

> [A]lthough the infection [of Graham's tooth] was serious, the plaintiff has failed to prove that the named defendants, Farrier and Baughman, were deliberately indifferent to his medical needs. There was no evidence presented that defendants Farrier and Baughman had any personal knowledge of the treatment accorded the plaintiff, or that they had "knowledge of a pattern of constitutionally offensive acts by their subordinates [and] fail[ed] to take remedial steps." *Herrera v. Valentine,* 653 F.2d 1220, 1224 (8th Cir.1981). Since the doctrine of respondeat superior does not apply to claims arising under 42 U.S.C. § 1983, *Rizzo v. Goode,* 423 U.S. 362, 370–71 [96 S.Ct. 598, 603–04, 46 L.Ed.2d 561] (1976); *Herrera v. Valentine,* 653 F.2d at 1224; *Ronnei v. Butler,* 597 F.2d 564, 566 (8th Cir.1979), plaintiff's claim must fail as to the defendants Farrier and Baughman.

(Footnotes omitted.)

The district court adopted these findings. Our review of the record likewise leads us to the same conclusion.

We affirm that portion of the district court's decision denying Graham's eighth amendment claim. We reverse the court's decision on the procedural due process issue and remand for a determination and award of nominal damages, costs and reasonable attorney fees.

---

7. Although this lack of evidence as to what the inmate witnesses would have testified to was, at least initially, defendants' fault since they neither allowed them to testify nor were their statements taken, this does not excuse Graham's failure to submit the substance of their testimony to the magistrate. Graham has offered no reason as to why the witnesses were not called at the evidentiary hearing or why their affidavits or depositions could not have been taken.