Shon TURNER, Appellee,

v.

Paul CASPARI, Appellant,

Mary Brundage, Defendant,

Ann Austermann; Major J. Smith; Janet Schneider, Appellants.

No. 94–1077.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1994.

Decided Oct. 27, 1994.

Rehearing Denied Nov. 30, 1994.

John Joseph Lynch, St. Louis, MO, argued, for appellant.

Jan Adams, St. Louis, MO, argued, for appellee.

Before WOLLMAN, MAGILL, and BEAM, Circuit Judges.

MAGILL, Circuit Judge.

Defendants, all officials of Missouri Eastern Correctional Center (MECC), appeal the district court's judgment that they violated Shon Turner's due process rights by refusing to allow Turner to call live witnesses at his disciplinary hearing. MECC raises three issues on appeal: that Turner had no liberty interest in the disciplinary hearing; that using inmate witness statements instead of live testimony at Turner's disciplinary hearing did not violate his due process rights; and that use of a confidential informant's statement at Turner's disciplinary hearing did not violate his due process rights. We reverse.

## I.  BACKGROUND

In April 1991, Turner was an inmate at MECC. On April 11, 1991, in a prison fight, MECC inmate Anthony Harris's jaw was broken. Harris initially reported that he had been hit by a basketball. Two weeks later Harris reported that he had been hit by an inmate named Shon. MECC investigator McKay then showed him seven photographs of suspected inmates and Harris identified Shon Turner as his assailant.

On April 29, 1991, Turner was placed in the MECC administrative segregation unit pending investigation of the assault on Harris. Turner was issued a major conduct violation for the assault on Harris on May 1, 1991. Turner used a "Witness Request" form to request inmates Chris Bohlen, Tony Washington and Kevin Harrison as witnesses at his Adjustment Board (Board) hearing.

MECC caseworker Brundage interviewed Bohlen, Washington and Harrison and obtained witness statements from them prior to the disciplinary hearing. On May 6, 1991, the Board held a disciplinary hearing which was continued for additional investigation. At this hearing, Bohlen's, Washington's and Harrison's written statements were read into the record. The Board also received an investigative report from McKay detailing Harris's injuries and a written statement by Harris identifying Turner as his assailant. Additionally, the Board had the results of Harris's psychological stress test[1] which indicated he answered truthfully when he stated Turner assaulted him.

At the renewed hearing on May 16, 1991, the members of this Board were Chairwoman Schneider, Barnhill and Smith. Additional evidence introduced at this hearing was Turner's denial of any knowledge of the assault on Harris and a confidential informant's statement, saying that the informant saw Turner threaten Harris and that Harris identified Turner to the informant as the inmate who had broken his jaw. Turner was present at both hearings.

The Board determined Turner was guilty of the assault on Harris based on Harris's statement identifying Turner as the assailant and the psychological stress test results indicating that Harris was being truthful when

---

1. A psychological stress test is similar to a polygraph examination. Harris was asked three questions during his stress test: "Did Shon Turner hit you in the jaw? Did Shon Turner hit you because you lost two chess games to him and he didn't think you would pay him? Were you playing for $2.00 a game?" Harris answered affirmatively to all questions and the test administrator indicated he felt Harris was answering truthfully. Appellant's App. at 1.

he identified Turner as his assailant. Chairwoman Schneider stated that she also considered the confidential informant's statement when making her determination of guilt. Trial Tr. at 70. Based on the finding of a major conduct violation, Turner was ordered transferred from MECC (a level 4 facility) to a more restrictive level 5 facility[2] and ordered to remain in administrative segregation pending transfer.

This § 1983 suit ensued. Turner's claims were that MECC violated his due process rights by refusing to allow him to call the three inmate alibi witnesses, by failing to state in the administrative record the reasons for this refusal and that the Board erred in considering the testimony of a confidential informant without corroborating evidence. After a bench trial, the district court found that (1) MECC violated Turner's due process rights by failing to state in the record the reasons for not calling Turner's witnesses; (2) MECC was required to call live witnesses at disciplinary hearings unless a legitimate penological reason for failing to call them was stated in the record; (3) MECC violated Turner's due process rights by relying on a confidential informant's statement without making any determination that the informant was a reliable witness; and (4) Superintendent Caspari violated Turner's due process rights by acquiescing in conduct of the Board. The district court awarded nominal damages in the amount of $500 and ordered a new hearing on the alleged assault of Harris comporting with due process.

## II. DISCUSSION

This appeal challenges the district court's conclusions of law. We review the district court's determination of applicable legal principles de novo.

### A. Liberty Interest

MECC argues that the regulations outlining the procedures and purposes for an Adjustment Board do not create a liberty interest as asserted by Turner. We turn to that issue first because it is dispositive.

■ In this circuit, "an inmate facing disciplinary proceedings is entitled to, among other things, advance written notice of the claimed misconduct and a hearing at which he may call witnesses and present documentary evidence." *Clark v. Groose*, 36 F.3d 770 (8th Cir.1994) (per curiam) (citing *Wolff v. McDonnell*, 418 U.S. 539, 562–67, 94 S.Ct. 2963, 2977–80, 41 L.Ed.2d 935 (1974)). Turner "may not be subjected to additional punishment, not contemplated in [his] sentence of imprisonment, without due process of law." *Malek v. Camp*, 822 F.2d 812, 815 (8th Cir.1987) (quoting *Jones v. Mabry*, 723 F.2d 590, 594 (8th Cir.1983), *cert. denied*, 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984)) (internal quotations omitted). Accordingly, in this circuit it is established that Turner was entitled to a hearing before he could be disciplined for the assault on Harris.[3] Because the hearing requirement is independently established, we need not reach the question of whether the regulations addressing the procedures governing an Adjustment Board in and of themselves create a protected liberty interest.

### B. Live Witnesses at Disciplinary Hearings

The next question to be determined is whether the hearing Turner received comports with the requirements of due process. Turner argues that his due process rights were violated because witness statements were used at his hearing, he was not allowed to call live witnesses and no reason was stated in the administrative record explaining why live witnesses were not permitted.

■ Prison officials may provide inmates with less procedural due process than required in a criminal prosecution because of security concerns in penal institutions. *Freitas v. Auger*, 837 F.2d 806, 808 (8th Cir.1988). It is well established that an inmate does not have an absolute right to call live witnesses at a disciplinary hearing. *Wolff*, 418 U.S. at

---

2. A level 5 facility is a maximum security facility.

3. It should be noted that the purpose of holding a hearing before the Board is "to ensure that inmates receive full consideration and due process prior to the issuance of such severe sanctions." Appellant's App. at 75–81.

566, 94 S.Ct. at 2979–80. *Wolff* held that an "inmate facing disciplinary proceedings should be allowed to call witnesses ... in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.*

██ Prison officials are accorded great discretion to refuse to call witnesses who are irrelevant, unnecessary or who may undermine prison authority. *Brown v. Frey,* 889 F.2d 159, 168 (8th Cir.1989), *cert. denied,* 493 U.S. 1088, 110 S.Ct. 1156, 107 L.Ed.2d 1059 (1990). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." *Id.* at 167 (quoting *Wolff,* 418 U.S. at 566, 94 S.Ct. at 2980) (internal quotations omitted). However, prison officials may not arbitrarily deny an inmate's request to call witnesses. *Malek,* 822 F.2d at 815 (citing *Ponte v. Real,* 471 U.S. 491, 495–96, 105 S.Ct. 2192, 2195–96, 85 L.Ed.2d 553 (1985)).

██ Preventing retaliation against an inmate witness is a legitimate security concern justifying prison officials' refusal to allow witnesses at a disciplinary hearing. *Wolff,* 418 U.S. at 562, 94 S.Ct. at 2978. Turner was charged with an assault on a fellow inmate that · culminated in a broken jaw. Chairwoman Schneider testified that in cases similar to Turner's, the Board utilizes witness statements because they are concerned that the witnesses may be intimidated by the inmate suspected of the assault if those witnesses were called to testify in person at the hearing. Trial Tr. at 77–78. This testimony reflects a legitimate policy of MECC officials designed to prevent retaliation against and intimidation of witnesses. Additionally, preventing intimidation of witnesses greatly enhances the reliability of their testimony.

This concern is magnified in the prison setting where inmates often "have little regard for the safety of others ... or for the rules designed to provide an orderly and reasonably safe prison life." *Wolff,* 418 U.S. at 562, 94 S.Ct. at 2977. Accordingly, we feel that the desire to prevent witness intimidation at Turner's hearing was a legitimate penological concern justifying the refusal to utilize live testimony, especially considering the extremely violent nature of the conduct with which Turner was charged. *See Ponte,* 471 U.S. at 495, 105 S.Ct. at 2195.

In *Malek,* we held that Malek's due process rights were not violated by the refusal to call live witnesses at a disciplinary hearing when Malek testified on his own behalf and introduced a statement of another inmate supporting his claim. 822 F.2d at 815. The disciplinary hearing committee determined "the offered testimony was not reasonably necessary to resolve the conflict and would cause undue delay" because Malek stated that the live testimony would similarly support his position. *Id. Malek* is directly applicable to the situation here. At Turner's hearing, three witnesses' statements[4] were read into the record. Chairwoman Schneider testified that the Board viewed two of the statements as exculpatory and one as neutral. Trial Tr. at 69. On appeal, Turner argues that these witnesses should have been present to testify at the hearing because he may have been able to elicit testimony from them that may have exonerated him. Appellee's Br. at 12. Turner also argues that the statements obtained from all witnesses were incomplete because they "do not include the fact that the witnesses were playing basketball with [Turner] *at the time* of the alleged assault and for that reason [Turner] could not possibly have been the perpetrator." *Id.* at 13 (emphasis in original). However, we believe that the Board did not violate Turner's due process rights by refusing to allow

---

**4.** Kevin Harrison's statement was, "We had just shot basketball in the gym. He (Shon) has never bet with me. I remember seeing Harris outside spitting up blood. Harris was playing basketball on the other court." Tony Washington's statement said, "We were in the gym playing ball, Anthony was playing on the other end. He went running out of the gym and we went to see what was up and he was spitting out blood. He said someone had balled him. I can't remember the date and day of the week, I just remembered when it happened." Chris Bohlen's statement simply said, "I didn't see a fight and I don't remember anything like this." Appellant's App. at 7.

live testimony. The additional facts that Turner wanted to elicit from his alibi witnesses were implicit in two of the witness statements. Schneider recognized this when she stated that she believed two of the statements were favorable to Turner and one was neutral. Accordingly, under the circumstances the Board was within its discretion in determining that requiring the witnesses to be present to testify at Turner's hearing was unnecessary and merely cumulative.[5]

■ Turner's argument that MECC violated his due process rights by failing to state its reasons for refusing to call live witnesses at the Board hearing is meritless.[6] Prison officials may explain the failure to call witnesses at a disciplinary hearing in either the administrative record or through testimony in court.[7] *Ponte*, 471 U.S. at 497, 105 S.Ct. at 2196. Barnhill, a member of Turner's Board, was unable to recall in her deposition why live witnesses were not called in Turner's Board hearing. Trial Tr. at 13.

However, Chairwoman Schneider testified at trial that witness statements instead of live testimony were used because Turner was charged with a major conduct violation and the Board was trying to prevent witness intimidation. Trial Tr. at 77. Under *Ponte*, MECC was entitled to wait until Turner challenged the Board at trial to provide reasons for failing to call live witnesses at the hearing. *Ponte*, 471 U.S. at 497, 105 S.Ct. at 2196. MECC provided adequate justifications for refusing to permit Turner to call live witnesses at his Board hearing.

Because we have determined that MECC had legitimate security concerns for refusing to allow live witness testimony at Turner's Board hearing, MECC was within its discretion to refuse to allow witnesses at Turner's Board hearing.[8] Therefore, the Board did not violate Turner's due process rights by failing to allow live testimony at his Board hearing and the district court erred when it determined otherwise.

5. The district court cites *Graham v. Baughman*, 772 F.2d 441 (8th Cir.1985), and *Moran v. Farrier*, 924 F.2d 134 (8th Cir.1991), in support of its finding that MECC violated Turner's due process rights by refusing to allow Turner to present live witnesses at his Board hearing. Both of these cases are, however, inapposite. In *Graham*, we initially upheld prison officials' refusal to allow witnesses at Graham's disciplinary hearing which occurred in the aftermath of a riot because of the need for swift discipline. *Graham*, 772 F.2d at 445. We determined that at some later point the prison officials should have contacted Graham's witnesses and interviewed them. *Id.* at 446. In Turner's case, MECC officials did interview his witnesses. Furthermore, the justification for refusing live testimony was to prevent witness intimidation, not the need for swift discipline. The value of preventing witness intimidation does not diminish with the passage of time, unlike the need for swift discipline in the aftermath of a prison riot.

   In *Moran*, we determined that prison officials violated Moran's due process rights because, unlike the MECC officials involved in Turner's investigation, they took no action when Moran requested a witness at his disciplinary hearing and offered no justification for their actions. *Moran*, 924 F.2d at 137. We further held that the disciplinary actions taken in *Moran* were based on an incomplete investigation and there was not a factual basis sufficient to ensure that prison officials acted fairly in reaching their decision. *Id.* Due process requires that the findings of a disciplinary board must be supported by some evidence in the record. *Superintendent v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86

L.Ed.2d 356 (1985). In determining whether there is some evidence in the record, the Court states that the "relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455–56, 105 S.Ct. at 2774. There is some evidence in the record to support the findings of Turner's Board: Harris submitted a statement identifying Turner as his assailant and the Board had Harris's stress test results that indicated Harris was being truthful when he stated Turner was his assailant. Accordingly, there was a factual basis in Turner's Board hearing sufficient to ensure the Board acted fairly.

6. MECC's failure to state reasons for not calling live witnesses in the administrative record might constitute a violation of state regulations. In such a case, Turner should petition the state court for a writ of mandamus. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105–06, 104 S.Ct. 900, 910–11, 79 L.Ed.2d 67 (1984) (federal courts have no authority to issue writs of mandamus to direct state officials to conform their conduct to state law).

7. We think that the more prudent approach would be to document reasons for failing to call witnesses in the record. This would prevent the problem of witnesses' memories fading.

8. We do not reach the question whether a general practice of using witness statements by MECC satisfies the requirements of due process without a showing of a legitimate security concern in the individual case.

## C. Confidential Informant's Statement

 Turner also argues that his due process rights were violated because the Board relied on a statement from a confidential informant [9] without determining whether the informant was reliable. MECC argues that the confidential informant's reliability was corroborated by evidence in Turner's Board hearing.

A determination of the reliability of a confidential informant must be made. *Freitas*, 837 F.2d at 810. We have required this determination to ensure that some evidence supports the disciplinary finding and to preclude arbitrary deprivations of an inmate's liberty. A determination of such reliability may be made by the district court *in camera*. *Id.* It appears that the district court did not engage in such a review and simply held that the Board violated Turner's due process rights because the Board did not include a written statement assessing the confidential informant's reliability. We need not remand the case for a determination of the informant's reliability because we feel there is sufficient evidence in the record to determine the confidential informant was reliable.

In *Freitas*, the only evidence used to find Freitas guilty of a conduct violation for conspiring to escape were statements from two confidential informants and Freitas's statements admitting that he had spoken to other inmates about an escape attempt but that he had not acted to further these conversations or conspired to escape. *Id.* at 808. Accordingly, the confidential informants' statements were the only evidence with which to determine Freitas had conspired to escape. In determining that the statements were reliable, we stated that the magistrate judge's determination that the statements contained some factual background, were consistent with each other and one statement was

against the informant's penal interest was sufficient to determine the statements were reliable. *Id.* at 811.

At Turner's Board hearing, the confidential informant's statement was not the only evidence that implicated Turner in the assault. Thus, *Freitas* is inapposite. *Freitas* required a determination of a confidential informant's reliability to ensure the disciplinary hearing decision was supported by some evidence because the confidential informants' statements were the only evidence relied upon. This purpose of ensuring some evidence to support the Board's decision is met here without determining the reliability of the confidential informant because the informant's statement was not the only evidence relied upon by Turner's Board.[10] In any event, we believe the informant's statement was reliable. The informant's statement was rich in factual background, not conclusory and consistent with Harris's allegations that Turner assaulted him. Accordingly, we feel that the confidential informant's statement was reliable and the Board did not err by relying upon it.

## III. CONCLUSION

For the above reasons, we reverse the decision of the district court finding that MECC violated Turner's due process rights and remand for dismissal and entry of judgment in favor of defendants.

---

9. Officer Reising reported that when leaving Harris's cell, on May 13, 1993, a confidential informant reported to him, "inmate Shon Turner had stopped by [Harris's] cell, 258, last Wednesday, 5/8/91, on his way to the showers. Turner had beat on the glass and made the following statement, 'Hey you big fat bitch![,'] (pointing at inmate Harris), 'I should have busted your head instead[.']" Appellee's App. at 19. Reising further reported that the confidential informant told him that he asked Harris who that was and

Harris replied, " '[t]hat was the guy who broke my jaw[.']" Appellant's App. at 8.

10. "Due process requirements are satisfied if there is any evidence in the record which supports the disciplinary decision." *Mason v. Sargent*, 898 F.2d 679, 680 (8th Cir.1990) (citing *Hill*, 472 U.S. at 455–56, 105 S.Ct. at 2774; *Rudd v. Sargent*, 866 F.2d 260, 262 (8th Cir.1989) (per curiam)).