Charles R. PETTIFORD, Petitioner–
Appellant,

v.

Cecil DAVIS, Respondent–Appellee.

No. 02–4068.

United States Court of Appeals,
Seventh Circuit.

Submitted June 25, 2003.*

Decided July 7, 2003.

Before BAUER, COFFEY, and EVANS, Circuit Judges.

### ORDER

A conduct adjustment board at the Indiana State Prison found inmate Charles

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Pettiford guilty of battery. As a result, he lost 365 days of earned good-time credits, was demoted in credit-earning class, and was further ordered to serve one year in disciplinary segregation. After exhausting his state remedies, Pettiford filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The court denied his request and Pettiford appeals. We affirm.

In April 2001 inmate Hicks was "blindsided" in the recreation yard by someone who beat him up so badly that he suffered three cuts on his face, a broken jaw, and had to be transported to a hospital. Hicks did not see who hit him, but a confidential informant told a prison officer that Pettiford had done it. The officer went to Pettiford's cell, but he was not there. When Pettiford returned, the officer searched the duffle bag that Pettiford had with him and discovered a pair of bloody gym shorts therein. The officer interrogated Pettiford, but he refused to answer any questions and was placed in segregation. While in segregation officers interrogated Pettiford again about the bloody gym shorts; this time he stated that the blood came from his finger, which he said he cut while playing basketball. Although he denied attacking Hicks, he was eventually charged with battery.

Pettiford pleaded not guilty, claiming at his disciplinary hearing that he was playing basketball with other inmates when Hicks was assaulted. Pettiford offered witness statements from six inmates corroborating his account. He also offered his own written explanation of the source of the blood on his gym shorts, but his explanation contradicted his earlier statement to officers that it came from a cut on his own finger. He now claimed that the blood came from other inmates who got "a bunch of cuts" on their bodies while they played basketball with him the day of Hicks' assault. The CAB found him guilty.

In his § 2254 petition, Pettiford alleged that he was denied due process at the disciplinary hearing. In particular he alleged that the prison failed to obtain all of the witness statements he requested; that the board failed to let him view the bloody gym shorts before or during his hearing; that it failed to establish the reliability of the confidential informant who identified him as Hick's attacker; and that the CAB's decision was unsupported by the evidence.

Because Indiana prisoners have a protected liberty interest in earned good-time credits and in credit-earning class, Pettiford was entitled to due process before the prison took away those credits. *Piggie v. McBride*, 277 F.3d 922, 924 (7th Cir.2002). In prison disciplinary proceedings, due process requires that prisoners receive advance notice of the charges against them, an opportunity to call witnesses and present documentary evidence, a written statement of the evidence relied on and the reason for the disciplinary action, and a decision supported by "some evidence." *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

Pettiford argues that he was denied due process when prison officials refused to allow him to view his bloody gym shorts. Pettiford believes that his lack of access to the blood-stained clothing somehow prevented him from presenting potentially favorable evidence at his hearing. But the stained shorts were introduced in evidence during his hearing, and therefore the CAB knew whatever probative value the shorts represented. *See White v. Indiana Parole Bd.*, 266 F.3d 759, 768 (7th Cir.2001).

Pettiford also argues that he was denied due process when the CAB relied upon the confidential informant's statement without establishing the informant's reliability. When the CAB relies upon evidence from a confidential informant, the informant's

reliability must be established with testimony that either corrobates the confidential information or establishes that the informant has been reliable in the past. *See, e.g., Whitford v. Boglino,* 63 F.3d 527, 535–36 (7th Cir.1995). We note initially that it is debatable whether the CAB relied upon the confidential informant's statement: the CAB's decision mentions the internal affairs report in which the statement appears, but it does not assess the statement itself. But even if the CAB did rely upon the statement, there is more than ample evidence other than the statement to sustain the CAB's decision against Pettiford. The other evidence against Pettiford that was considered by the CAB included the bloody gym shorts and Pettiford's inconsistent explanations for where the blood came from, claiming first that it was his own blood but then later claiming that the blood came from other inmates. Pettiford argues that this other evidence was insufficient to convict him, but due process requires only that there be "some evidence," a lenient standard that was met here. *See McPherson v. McBride,* 188 F.3d 784, 786 (7th Cir.1999); *see also Turner v. Caspari,* 38 F.3d 388, 393 (8th Cir.1994) (establishing an informant's reliability is unnecessary where independent evidence supports the CAB's decision).

Finally, Pettiford contends that he was denied due process because the prison failed to obtain a statement from inmate O'Neill, one of the witnesses he listed in his screening report. But Pettiford's contention is without merit: a statement from O'Neill is in the record along with the other five witness statements that the CAB considered.

Accordingly, we AFFIRM the judgment of the district court.