STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AUGSC-AP-2019-06

RYAN HOPKINS,

Petitioner

v.

**DECISION AND ORDER**

MAINE DEPARTMENT OF
CORRECTIONS,

Respondent.

## INTRODUCTION

The matter before the court is an appeal by Ryan Hopkins, an inmate at the Maine State Prison (MSP), from a disciplinary proceeding that resulted in the imposition of sanctions against him for the offenses of Influencing Staff and False Statement as defined under the Prisoner Discipline Policy. This appeal has been brought in accordance with 5 M.R.S. §§ 11001-11008 (Administrative Procedure Act) and M.R. Civ. P. 80C.

## FACTUAL BACKGROUND

The following facts are taken from the Certified Record (C.R.).

On November 13, 2018, Ryan Hopkins (Petitioner) approached Lori DesSureault (DesSureault), a caseworker at MSP, in the caseworker office. (C.R. 2.) He requested her help to bring two soda bottles containing creatine[1] into MSP. (C.R. 2.) He told DesSureault that he knew the supplier and that he would make it worth her while. (C.R. 2.) DesSureault declined to help the Petitioner and told him that it was inappropriate for

---

[1] Creatine is an amino acid that can be made synthetically. Creatine improves athletic performance and increases muscle mass. *Creatine*, Mayo Clinic, (Oct. 12, 2017) https://www.mayoclinic.org/drugs-supplements-creatine/art-20347591 (last visited July 1, 2019).

1

him to ask her such a question. (C.R. 2.) Petitioner was disappointed and frustrated and said that he knew DesSureault had "done things for other inmates." (C.R. 2.) DesSureault said she had not, and she would not. (C.R. 2.) Petitioner then left the office. (C.R. 2.) DesSureault spoke with the Petitioner again that afternoon, in hopes of clarifying the matter. (C.R. 2.) The Petitioner acted as if the prior conversation did not happen, was confrontational throughout the short discussion, and said that he has eyes and ears everywhere, and has seen DesSureault bring in clothes for other inmates. (C.R. 2.) DesSureault authored the Disciplinary Incident Report on November 15, 2018. (C.R. 2.)

As a result of the above exchange, the Petitioner was charged with Influencing Staff, a class A violation, and False Statement, a class B violation. The Prisoner Discipline Policy defines Influencing Staff as "[p]romising, offering, or giving to any Department staff any monetary or other benefit for the purpose of influencing staff in the performance of official duties." 20.1 Procedure E. False Statement is defined as "[m]aking or soliciting a false statement, whether verbal or written." Proc. E.

In the Investigation, the Petitioner wrote that he never asked DesSureault to bring anything in, and that her statement was false. (C.R. 3.) The Petitioner was notified on November 20, 2018, of a disciplinary hearing to occur on December 4, 2018. (C.R. 1.) The Petitioner listed Warden Liberty, Makala,[2] and a fellow inmate as witnesses who he wished to call at the hearing. (C.R. 1.) On December 4, 2018, the hearing occurred, and the Petitioner maintained the same version of events that he provided in the Investigation. (C.R. 6.) The Petitioner testified on behalf of himself and submitted a written statement (Statement). (C.R. 6.) The Statement detailed an entirely different

---

[2] Makala is a Department of Corrections intern. Her last name is not provided.

2

version of the event from that provided by DesSureault, and provided his reasons for calling each witness. (C.R. 6.) He explained that he called Warden Liberty because he had asked him to investigate his contacts and communications to show that he did not know any supplier well, and never had phone conversations or written communications regarding soda bottles or creatine. (Statement 4.) He wished to call Makala because she was present a week prior to the November 13, 2018 incident, at a time when DesSureault allegedly accused him of "doing wrong, but not getting caught." (Statement 4.) The Petitioner would have offered this to show that DesSureault had made prior false accusations against him. (Statement 4.) The inmate the Petitioner wished to call was also present when DesSureault made the alleged false statement to the Petitioner, and presumably would have testified to the same. (Statement 4.)

The Hearing Officer (HO) explained that Warden Liberty, Makala, and the inmate listed on the notification of disciplinary hearing form were not called as witnesses because none of them were present on November 13, 2018, when the incident took place. (C.R. 6.) He further stated that "[e]ach of the witnesses are considered as corrector [sic] witnesses and is against policy." (C.R. 6.) The HO found the Petitioner guilty of both violations based on DesSureault's Report. (C.R. 7.) The Petitioner received fifty days in segregation and the loss of fifty days of good time as discipline. (C.R. 8.) On December 18, 2018, the Petitioner administratively appealed the HO's finding of guilt, arguing that (1) an appropriate investigation was not conducted; (2) the HO improperly denied his request for witnesses at the hearing; and (3) there was insufficient evidence supporting the HO's finding of guilt. (C.R. 10.) Warden Liberty affirmed the HO's decision on December 28, 2018, and notification of the same was provided to the Petitioner on January 18, 2019. (C.R. 21.) This timely M.R. Civ. P. 80C appeal followed.

3

## DISCUSSION

The Law Court has frequently reaffirmed the principle that judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (quoting *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Dept. of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566. The party seeking to vacate a state agency decision has the burden of persuasion on appeal. *Anderson v. Maine Public Employees Retirement System*, 2009 ME 134, ¶ 3, 985 A.2d 501. In particular, a party seeking to overturn an agency's decision bears the burden of showing that "no competent evidence" supports it. *Stein v. Me. Crim. Justice Academy*, 2014 ME 82, ¶ 11, 95 A.3d 612.

On January 18, 2019, the Petitioner filed his Petition for Judicial Review of Final Agency Action. In his subsequent briefing he argues that the Respondent unreasonably restricted or withheld his right to call witnesses by not calling DesSureault on its own and denying his other witnesses, denied him a fair and impartial hearing as a result of its unreasonable restriction of his witnesses, and that substantial evidence did not support the HO's decision. The Respondent rebuts each of the Petitioner's arguments.

### I. The Witness Issues

The Petitioner claims that DesSureault should have been called as a witness because she is the MSP employee who accused him of the violations and he had a right to confront his accuser. He also maintains that his right to call the three other witnesses he listed on his notification of disciplinary report was unreasonably restricted in violation

4

of Maine Department of Corrections (MDOC) Prisoner Policy 20.1(B)(13) and 34-A M.R.S. § 3032(6)(D), which states that a prisoner's right to call witnesses may not be unreasonably withheld or restricted at a disciplinary hearing.[3]

For its part, the Respondent argues that the Petitioner did not list DesSureault as a witness on his notification of disciplinary hearing form, so the HO did not unreasonably restrict or withhold the Petitioner's right to call witnesses by not calling her. Further, he did not raise the issue in his appeal to the Chief Administrative Officer, and therefore it has been waived. Regarding the other witnesses that the Petitioner did list on the hearing notification form, the Respondent maintains that the HO provided an adequate reason for why they were not called when he explained that the witnesses were not present when the incident occurred, and that they amounted to character witnesses.[4] It acknowledges that no explicit policy exists barring character witnesses, but that for other reasons the HO acted within his discretion in denying the Petitioner those witnesses.

### A. Did the HO Violate the MDOC Policy or 34-A M.R.S. § 3032 by Not Calling DesSureault?

The Petitioner argues that DesSureault should have been called as a witness at the disciplinary hearing because he named her as his accuser during the investigation, and additionally because she named herself as a witness by virtue of the Disciplinary Incident Report she wrote. He cites to *Wolff v. McDonnell* for the proposition that he should be

---

[3] The court does not find merit in the Petitioner's argument that he was denied a fair and impartial hearing because the HO credited the disciplinary report over the Petitioner's consistent denials of the event. It is up to the HO as the factfinder to determine what weight to assign the evidence presented to him. *See Jalbert v. Me. Pub. Emples. Ret. Sys.*, 2017 ME 69, ¶ 12, 158 A.3d 940. An adverse finding against the Petitioner does not necessarily mean that the HO was biased or partial against him.

[4] The Respondent states that the HO made a typo when he put down "corrector witness" and instead intended "character witness."

allowed to call witnesses "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S. 539, 566 (1974). He also cites to *Carryl v. Maine Department of Corrections* for the importance of live testimony from an accuser, as a petitioner "may uncover additional facts, ambiguities and nuances that are not revealed in the officer's written report." No. AP-15-76, 2016 Me. Super. LEXIS 197, at *7 (Oct. 5, 2016) (Kennebec County, *Stokes, J.*).

The court rejects the Petitioner's arguments for the simple fact that he never listed DesSureault as a witness on the hearing notification form. That form states: "I understand that I must provide the names of my witness(es) at this time." *See* C.R. 1. Petitioner was permitted to list any person he desired as a witness at that time. Presumably, the MDOC asks for witnesses in advance to secure the attendance of named witnesses, or to avoid the Petitioner naming multiple witnesses at the hearing that he had not listed before the hearing. This is a permissible correctional goal under *Wolff*, which also explained that although a prisoner has rights under the Due Process Clause, a prison disciplinary proceeding is not a criminal prosecution and the prisoner does not have all the rights that a defendant would have in such a proceeding. 418 U.S. at 556. Because of that, "there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.*

To the extent that the Petitioner relies on *Carryl*, that case is easily distinguishable from the Petitioner's. There, on the notification of disciplinary hearing form, the prisoner listed as a witness the officer he was accused of attempting to influence. No. AP-15-76, 2016 Me. Super. LEXIS 197, at *3 (Oct. 5, 2016). Despite the prisoner naming the officer as a witness, the hearing officer declined to call the officer because he had the officer's detailed report, and therefore decided he did not need to call him. *Id.* at *3-4. The Superior Court (Kennebec County, *Stokes, J.*) determined that the HO's failure to call the officer

6

was a violation of 34-A M.R.S. § 3032(6)(D), because those "rights do not exist for the convenience of the Hearing Officer. Rather, they exist so as to effectuate the goal of providing a fair and impartial hearing." *Id.* at *6. Not calling the witness deprived the prisoner of his right to an impartial hearing. *Id.* at *7. The court noted that the right to call witnesses was subject to reasonable restriction and regulation, but in that case it was not reasonable to categorically deny the prisoner the right to call the officer as a witness solely because the HO had the officer's written report. *Id.*

Here, the Petitioner did not list DesSureault as a witness. The Respondent cannot be said to have unreasonably restricted the Petitioner's right to call witnesses if he did not list DesSureault as a witness in the first place. Therefore, the court rejects the Petitioner's argument on this issue.[5]

### B. Did the HO Violate the Petitioner's Rights by Refusing to Call the Three Witnesses the Petitioner Properly Listed and Requested be Called?

The Petitioner argues that MDOC Policy does not prohibit character[6] witnesses and therefore his right to call witnesses was unreasonably restricted under § 3032(6)(D).[7]

He states that the HO did not find the witnesses' testimony irrelevant, but instead denied it because none of the witnesses were present during the incident. The Petitioner gives

---

[5] Moreover, the court finds that the Petitioner waived his right to appeal this issue as he did not address it in his administrative appeal. *See Antler's Inn & Restaurant., LLC v. Dep't of Pub. Safety* 2012 ME 143, ¶ 9, 60 A.3d 1248 (precluding arguments for appellate review by the court if they were not raised before the agency, even if they are of "constitutional dimension.").

[6] The Petitioner makes much of the Respondent now explaining, after the hearing, that the HO meant to identify these witnesses as character witnesses, not "corrector" witnesses. The court accepts the Respondent's explanation and undertakes the following analysis under the presumption that the HO denied the witnesses for being character witnesses.

[7] This section provides that when punishment may affect the Petitioner's term of commitment or sentence, the Respondent is required to provide an impartial hearing, in which the Petitioner has the right, among others, to call witnesses. This right "may not be unreasonably withheld or restricted."

examples of instances where this could hamper a prisoner's defense, such as if the prisoner attempted to call a witness to create an alibi for the prisoner not being present at the place of the alleged incident, or if the prisoner was following the directions of an officer who directed him to be at a certain place, and another officer wrote him up for being out of bounds.[8] Petitioner finally argues that the HO's reason for not calling the witnesses, specifically that they were not eyewitnesses to the incident, is in violation of his due process rights and supports his position with caselaw. The Respondent, on the other hand, contends that the reasons that the HO gave for not calling the Petitioner's witnesses amounted to a finding that their testimony was irrelevant, and it too supports its position with different caselaw.

The explanation the HO gave for not calling each witness is reproduced verbatim below:

> Warden Liberty will not be called as a witness because he wasn't there when the incident took place. The prisoner stated that he put the Warden down as a witness because he had a conversation with the warden after the incident had taken place. [The fellow inmate] will not be called as a witness because he wasn't there when the incident took place. The prisoner states this in his written statement also. Makala will not be called as a witness because he wasn't there when the incident took place. Each of the witnesses are considered as corrector [sic] witnesses and is against policy.

(C.R. 6.) In *Wolff*, the Supreme Court explained that while the hearing officer is not required to, "it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). As the Respondent points out, the Second Circuit has held that "a hearing officer does not violate due process by

---

[8] Neither circumstance is present in this case.

8

excluding irrelevant or unnecessary testimony." *Kalwasinski v. Morse*, 201 F.3d 103, 109 (2d Cir. 1999). There, the prisoner's due process rights were not violated when the hearing officer did not call prison officers the prisoner requested as witnesses because those officers were not present at the incident, which gave the hearing officer a "rational basis for concluding that the testimony of [those] additional witnesses would be irrelevant or unnecessary." *Id.* In that case, two other prison officers had already testified, and the prisoner had called fourteen additional officers to testify. *Id.*

The Eighth Circuit has held that it was appropriate for prison officials to decline to call character witnesses because the hearing officer was well within his discretion "in concluding that such evidence was either irrelevant or unnecessary." *Graham v. Baughman*, 772 F.2d 441, 445 (8th Cir. 1985). The *Graham* court, however, went on to address whether the denial of the prisoner's eyewitness in the cells next to his, who would have testified that the prisoner was not attempting to contribute to a fire outside his cell by pushing a broom towards the burning material, amounted to a due process violation. The court took into account that the hearing was held in the aftermath of a riot, when the prison heard approximately 118 cases in the days following the riot, but concluded that the prison's reasons for excluding the witnesses were not legitimate. *Id.* In rejecting the prison's argument the court explained that the

> [prison] contend[ed] that such testimony was irrelevant and unnecessary because it was "merely corroborative" of [the prisoner's] story. However, as is many times the case with disciplinary proceedings, this was a swearing contest between the inmate and the charging officer. In such situations, the inmate faces a severe credibility problem when trying to disprove the charges of a prison guard. "Merely corroborative" evidence is many times the most probative for it may substantiate and make credible an otherwise bald and self-serving position.

*Id.* (internal quotations and citations omitted). It observed that in the aftermath of a riot, the hearing officer not calling a witness because he did not have time "to call a bunch of

9

witnesses," may initially have had merit, but as time progressed and the emergency passed, that reason lost its significance. *Id.* "Due process rights may sometimes be postponed, but they need not, and should not, be eliminated." *Id.*

The Petitioner contends that a blanket rule against calling a class of witnesses is unconstitutional. He cites to *Winnie v. Clarke*, where the court determined that a prison's policy of allowing the prisoner to call only eyewitnesses to the incident "may reduce the number of unnecessary witnesses to be called, it also appears to violate the U.S. Constitution, the laws of Nebraska, and the regulations of the [Department of Correctional Services] in the process." 893 F. Supp. 875, 879 (D. Neb. 1995) (reconsidered on other grounds). In *Jackson v. Vose*, the First Circuit explained that if challenged, the burden is on prison administrators to show that the reason for denying a prisoner witnesses was not arbitrary. No. 93-2202, 1994 U.S. App. LEXIS 27521, at *6 (1st Cir. Sep. 30, 1994) (per curiam) (citing *Ponte v. Real*, 471 U.S. 491, 497, (1985)). The court was reviewing a prison's decision not to permit live witness testimony of other prisoners, but only through affidavits. *Jackson*, at *2. The prisoner did not provide a basis for the relevance or necessity of the witnesses, as the expected testimony was not described. *Id.* at *3-4. The court stated it was not to substitute its judgment for those of the officers conducting the hearing. Instead, it was to "determine whether the proof offered to explain the refusal to call these witnesses satisfactorily carries defendants' burden of showing that the decision was not arbitrary." *Id.* at *6. Because the prison had explained that: it was concerned with bringing inmates from general population into a higher security section of the prison; it would have been difficult to relocate the hearing; and the prisoner did not give a basis for calling the witnesses, (the very same witnesses who provided testimony via affidavit), due process was clearly satisfied. *Id.* at *6-7.

10

Turning to this case, as the Petitioner points out, the HO did not cite any safety concerns as a reason for denying the witnesses. Nor did he actually state that the witnesses' testimony would have been irrelevant or unnecessary. That Makala's and the fellow inmate's testimony would have been irrelevant is a hindsight determination offered by the Respondent, who admits that no MDOC policy exists which prohibits "character" witnesses. The Petitioner explained that he wished to call Makala and the fellow inmate because they were supposedly present a week earlier at a time when DesSureault accused him of "doing wrong but never getting caught." Testimony of such an incident and statement by the accusing Corrections employee who authored the disciplinary report against the Petitioner was not mere "character evidence," but went to the bias and possible motive to falsify of the accusing officer. As such, it was potentially highly relevant.

The court is mindful that a hearing officer in a disciplinary hearing held within the confines of a prison has the discretion to limit or exclude irrelevant and time consuming evidence and testimony. According to statute, however, the right to call witnesses may not be unreasonably restricted or withheld.[9] The evidence the Petitioner sought to offer might have shown that DesSureault had made an accusation of wrongdoing against the Petitioner a mere week prior to the current incident that she alleged to have happened. This evidence is not character evidence as the Respondent contends, but instead is

---

[9] The court does not find merit in the Petitioner's argument that Warden Liberty should have been called as a witness to produce evidence from the Petitioner's phone and letter records which would arguably show that his communications did not make reference to creatine or suppliers. Although prisoners have a right to present evidence on their behalf, 34-A M.R.S 6(C), they do not have a right to discovery procedures, including calling the Warden to comb through all of their communications in order to possibly uncover evidence to discredit the MDOC employee who authored the disciplinary report. The HO did not unreasonably restrict the Petitioner's right to call witnesses, or present evidence, when he refused to call Warden Liberty.

11

evidence that tends to show bias, and bias is never collateral or irrelevant. *See State v. Filler*, 2010 ME 90, ¶ 19, 3 A.3d 365 (evidence that would tend to show a reason for a complaining party's alleged ulterior motive is relevant); *State v. McCurdy*, 2002 ME 66, ¶ 13, 795 A.2d 84 ("the defendant is free to present any facts that could reasonably show that a State witness has an ulterior motive for testifying against the defendant.").

Because of the nature of the allegations against the Petitioner, which amount to a swearing contest between the Petitioner and DesSureault, the HO acted unreasonably by refusing to call Makala and the fellow inmate, since such evidence could have lent credibility to his defense, when it may otherwise seem self-serving. *See Graham v. Baughman*, 772 F.2d 441, 443 (8th Cir. 1985). Because the HO excluded relevant evidence which could have tended to show bias on the part of the Petitioner's accuser, the Respondent unreasonably withheld the Petitioner's statutorily granted right to call witnesses.[10]

## CONCLUSION

The entry is:

The Petition for Judicial Review is GRANTED. Disciplinary Matter No. MSP-2018-2567 is REVERSED and REMANDED to the Respondent with instructions to conduct a disciplinary hearing that complies with the statute and MDOC policy and procedures.

The clerk is directed to incorporate this Order by reference in the docket in accordance with M.R. Civ. P. 79(a).

DATED: July _12_, 2019

William R. Stokes
Justice, Maine Superior Court

---

[10] In light of the court's determination that the HO unreasonably restricted the Petitioner's right to call witnesses who may have testified to relevant evidence, specifically DesSureault's alleged bias, there is no need to address his argument on substantial evidence.